BAMBI'S ROOFING, INC.,
Appellant–Plaintiff,

v.

Richard J. MORIARTY and Dahms
& Yarian, Inc., Appellees–
Defendants.

No. 43A03–0605–CV–213.

Court of Appeals of Indiana.

Dec. 12, 2006.

55(3)

Daniel G. McNamara, Kathryn A. Brogan, Fort Wayne, IN, Attorneys for Appellant.

Dane L. Tubergen, Fort Wayne, IN, Attorney for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Bambi's Roofing, Inc. (Bambi's) appeals the trial court's

grant of summary judgment in favor of Appellees–Defendants, Richard J. Moriarty (Moriarty) and Dahms & Yarian, Inc. (Dahms & Yarian) (collectively, the Accountants), concluding that Bambi's Complaint is barred by the statute of limitations.

We affirm.

### ISSUE

Bambi's raises three issues on appeal which we consolidate and restate as the following single issue: Whether the trial court erred by applying the statute of limitations contained in the Accountancy Act to bar its negligence claim against the Accountants.

### FACTS AND PROCEDURAL HISTORY

Moriarty is a certified public accountant, employed by the accounting firm of Dahms & Yarian. Continuously, from 1982 through 2003, the Accountants provided professional accounting services to Bambi's. During the specific period of June 30, 2000 until July 15, 2003, the scope of the work was defined by engagement letters, signed by Bambi's. These letters included compilations of the annual financial statement and assistance to Bambi's bookkeeper in adjusting the accounting books to enable Bambi's to prepare a working trial balance.

In December of 2000, Bambi's hired Christy Grogg (Grogg), at Moriarty's recommendation, as their in-house accounting officer to manage accounts receivable and accounts payable, to examine and audit the financial accounts and transactions, to keep records, and to supervise Bambi's financial affairs. After Grogg was hired, Moriarty trained her, while the Account-

ants continued to serve as Bambi's certified public accountants. By March 14, 2003, Bambi's discovered that Grogg had, in the course of her employment, embezzled an amount in excess of $76,900.00. Analysis of Bambi's records divulged that Grogg embezzled the money, using four principal methods: (1) she wrote unauthorized paychecks to herself on Bambi's payroll bank account; (2) she wrote unauthorized checks to herself, to "cash," and to Mutual Federal Savings Bank (the Bank) on Bambi's checking account in exchange for which the Bank's employees paid cash to Grogg. As to each of these transactions, she would falsely record in Bambi's financial accounting and management records that the check had been written payable to the order of a third-party or was for reimbursement of expenses that had never been incurred; (3) she took customers' cash payments; and (4) she presented checks drawn on customers' accounts and payable to Bambi's in exchange for cash by the Bank's employees. Grogg was convicted and sentenced on July 7, 2003.

On July 2, 2004, Bambi's filed a Complaint against Accountants alleging negligence in providing their accounting services. Thereafter, on July 27, 2005, the Accountants filed a Motion for Summary Judgment, Designation of Evidence, and Memorandum of Law in support thereof. On January 30, 2006, Bambi's filed its Memorandum in Opposition. On April 12, 2006, after a hearing, the trial court granted the Accountants' Motion for Summary Judgment finding that the statute of limitations contained in the Accountancy Act barred Bambi's negligence claim.[1]

Bambi's now appeals. Additional facts will be provided as necessary.

---

1. We note that Bambi's fails to include in its Appellant's Brief a copy of the trial court's Order from which it now appeals, as required by Indiana Appellate Rule 46(A)(10). Counsel for Bambi's is advised to include such documents in any future matter referred to this court.

## DISCUSSION AND DECISION

Bambi's contends that the trial court erred in granting the Accountants' Motion for Summary Judgment because the statute of limitations included in the Accountancy Act is not applicable in its case. Specifically, Bambi's asserts that the scope of the Accountancy Act is limited and excludes the services provided by the Accountants. As such, Bambi's maintains that the general two-year statute of limitations is applicable to its negligence claim. Alternatively, should the Act apply, Bambi's alleges that under the discovery rule, which determines the Act's accrual date, the statute is tolled until Bambi's discovered the Accountants' negligence, and not until the discovery of Grogg's embezzlement, as concluded by the trial court. Additionally, Bambi's claims that the continuing representation doctrine as applied to the legal profession should be made applicable to accountants, and thus would extend the statute of limitations.

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In so doing, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.*

Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep.'t, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

To make a determination, neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Heaton & Eadie Professional Services Corp. v. Corneal Consultants of Indiana, P.C.*, 841 N.E.2d 1181, 1185 (Ind.Ct.App.2006). Moreover, if the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced outside the statutory period, the non-movant has the burden of establishing an issue of fact material to a theory that overcomes the affirmative defense. *Id.*

We observe that in the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com*, 816 N.E.2d at 48. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

### II. Designated Evidence

■ Initially, we need to address certain mistakes and omissions in Bambi's record on appeal. Indiana Trial Rule 56(C) requires each party to a summary judgment motion to "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." More significantly, T.R. 56(H) specifically prohibits appellate courts from reversing a grant of summary judgment "on the ground that there is a genuine issue of material fact unless the material fact and

the evidence relevant thereto shall have been specifically designated to the trial court." T.R. 56(H).

In the case before us, Bambi's Appendix contains the Chronological Case Summary, the Order granting summary judgment, Bambi's Complaint, the Accountants' Answer and Counterclaim and Bambi's reply thereto, the Accountants' Motion for Summary Judgment and Designation of Evidence, and Affidavits of Bambi's' expert and its counsel. Conspicuously absent from the Appendix, however, is the Accountants' Memorandum of Law in support of their Motion for Summary Judgment, Bambi's own Motion in Opposition, Designation of Evidence, and a Memorandum of Law in support thereof in which Bambi's would have enumerated the evidence it specifically relied upon to rebut the Accountants' motion. Without such documents, we have no way to know what evidence, if any, Bambi's designated to the trial court.

■■■ Furthermore, although we agree that T.R. 56(C) mandates that designated evidence must be specifically detailed, the manner in which a party chooses to designate material is not mandated. *See Ling v. Stillwell,* 732 N.E.2d 1270, 1276 (Ind.Ct. App.2000), *trans. denied.* A party satisfies T.R. 56(C) if it specifies evidence in a summary judgment motion, separate filing of designation, or in a memorandum in support or opposition to the motion for summary judgment. *Id.* Here, the Accountants' designation of evidence lists, among others, "[Bambi's] Answer to [the Bank's] First Set of Interrogatories, Interrog. 7, attached hereto as Exhibit 'C.'" (Appellant's App. p. 33–34). Thus, even though Bambi's Answer to the Bank's First Set of Interrogatories is attached in

its entirety, the Accountants' designation of evidence clearly limited the evidentiary value of this exhibit to Interrogatory 7 only. Consequently, we strike portions of Bambi's and the Accountants' briefs [2] in so far that the factual assertions rely on facts not specifically included within Interrogatory 7. Furthermore, we alert Bambi's counsel that as we can only consider that portion of the record which is specifically designated, we refuse to review any documents contained in the Appendix but not enumerated in the Accountants' designation of evidence.

■■■ It is well settled that the duty of presenting a record adequate for intelligent appellate review on points assigned as error falls upon the appellant. *See* Ind. Appellate Rules 49(A) and 50, *see also e.g., Lasater v. Lasater,* 809 N.E.2d 380, 389 (Ind.Ct.App.2004). Where, as here, the record is highly deficient and seriously impedes a *de novo* review of the trial court's entry of summary judgment, it is well within our purview to dismiss Bambi's appeal. *See Yoquelet v. Marshall County,* 811 N.E.2d 826, 830 (Ind.Ct.App.2004); *Hughes v. King,* 808 N.E.2d 146, 148 (Ind. Ct.App.2004). Nevertheless, we choose to address Bambi's arguments because they raise concerns that merit discussion.

### III. *Statute of Limitations*

Bambi's overarching argument centers around the scope of the statute of limitations as contained in the Accountancy Act of 2001, Ind.Code § 25–2.1–1–1 *et seq.* Specifically, as Bambi's focuses on the services provided by the Accountants, it claims that the Accountants' performance went well beyond that envisioned by the Act.

---

**2.** Even though the Accountants only designated Interrogatory 7, they nevertheless, to our surprise, cite Interrogatory 22 on p. 7 of its Brief. We strike this portion of the Accountants' Brief.

We note that statutory interpretation is a question of law reserved for the courts. *Heaton & Eadie Professional Services Corp.*, 841 N.E.2d at 1186. When interpreting a statute, we look to the express language of the statute and the rules of statutory construction with the objective of ascertaining and giving effect to the legislature's intent. *KPMG, Peat Marwick, LLP v. Carmel Financial Corp., Inc.*, 784 N.E.2d 1057, 1061 (Ind.Ct.App.2003). We presume that our legislature intended its language to be applied logically and consistently with the underlying goals and policy of the statute. *Id.* Therefore, we will interpret the statute in such a manner as to "prevent absurdity and to advance public conscience," while remaining mindful of the statute's purpose, as well as the effect of our interpretation. *Id.*

### A. Scope of the Act

 As part of the Accountancy Act, the Indiana legislature included a narrow one-year statute of limitations, applicable only to explicitly enumerated causes of action against an accountant or firm of accountants. I.C. § 25–2.1–15–1. In particular, the statute provides:

Actions for negligence or breach of conduct against practitioner; scope of chapter.

This chapter governs an action based on negligence or breach of contract brought against an accountant, a partnership of accountants, or an accounting corporation registered, licensed, or practicing in Indiana by an individual or a business entity claiming to have been injured as a result of financial statements or other information examined, compiled, certified, audited, or reported on by the defendant accountant as a result of an agreement to provide professional accounting services.

I.C. § 25–2.1–15–1. Thus, the statute of limitations imbedded in the Accountancy Act deliberately uses limited terms to give special treatment to certain types of claims that otherwise would have been governed by the general two-year limitations or other more general statutes of limitations. *Heaton & Eadie Prof'l Servs. Corp.*, 841 N.E.2d at 1185 (quoting *Ernst & Young LLP v. Baker O'Neal Holdings, Inc. et al.*, 2004 WL 771230 (S.D.Ind. March 24, 2004)). Claims that are not specifically encompassed by the Act—such as claims of fraud, constructive fraud, and breach of fiduciary duty—are governed by the more general rule. *Id.* They are not within the deliberately narrower scope of the Accountancy Act's statute of limitations. *Id.*

Bambi's contends that the services provided by the Accountants went well beyond the compilation of financial statements and preparation of annual tax returns. They appear to maintain that their reliance on Moriarty's recommendation in hiring Grogg and his subsequent training of her, takes Bambi's complaint of negligence out of the realm of the one-year statute of limitations as provided in the Act.

The unambiguous language of the Act clearly states that the statute only controls Bambi's negligence claim if it arises "as a result of an agreement to provide professional accounting services." I.C. § 25–2.1–15–1. In order to assign meaning to the phrase "professional accounting services" we turn to other related statutory definitions provided within the Accountancy Act to ensure an harmonious interpretation with the larger Act. *See Appolon v. Faught*, 796 N.E.2d 297, 300 (Ind.Ct.App. 2003) ("statutes relating to the same general subject matter are in *pari materia* and should be construed together so as to produce a harmonious statutory scheme.") This definitional section of the Act is applicable throughout the entirety of the Accountancy Act. I.C. § 25–2.1–1–2.

Regarding certified public accountants, the term "professional" is defined as "arising out of or related to the specialized knowledge or skills associated with certified public accountants." I.C. § 25–2.1–1–10.3. Moreover, the practice of accountancy is defined as follows:

Practice of Accountancy means the performance or the offering to perform by a licensee of a service involving:

(1) the use of accounting or auditing skills, including the issuance of reports on financial statements;

(2) management advisory, financial advisory, or consulting services; or

(3) the preparation of tax returns or the furnishing of the advice on tax matters.

I.C. § 25–2.1–1–10(a).

In *Heaton & Eadie*, we addressed the issue whether an accounting firm's appraisal services fell within the meaning of practice of accountancy. *Heaton & Eadie Professional Services, Corp.*, 841 N.E.2d at 1181. Reviewing the evidence, we stated that the accounting services provided included, among others, analysis of accounts receivable, collection issues and accrued issues. *Id.* at 1187. Furthermore, the evidence clarified that the valuation assessment was classified as "management consulting services," a category listed in the statute. *Id.* Finding Heating & Eadie's business valuation services to be within the purview of a "skill-set unique to accountants," we concluded that the precise classification of these skills within one of the listed categories of I.C. § 25–2.1–1–10(a) to be irrelevant. *Id.* Because Heaton & Eadie were retained on the basis of their professional skills as accountants and because a dispute over accounting methodology during the assessment led to the negligence complaint, we held that the agreement fell within the scope of professional accounting services as required by the Act. *Id.*

Likewise, in the situation at bar, the designated evidence establishes that the Accountants provided professional accounting services to Bambi's pursuant to letters of engagement. These services included compiling annual balance sheets, statements of income, retained earnings, and cash flow, as well as preparation of federal and state income tax returns. In their engagement letters, the Accountants specifically acknowledge assisting Bambi's bookkeeper in adjusting the account books. Additionally, Bambi's Complaint, designated by the Accountants, elaborates that the Accountants effectively provided advice on structuring Grogg's position, and thereafter provided training and supervision to Grogg. The record further reflects that before, during and after Grogg's employment at Bambi's, the Accountants continued to provide accountancy services.

While we conclude that the run-of-the-mill accountancy services provided by the Accountants squarely fall within the purview of 'Practice of Accountancy,' we also find it to be irrelevant whether we classify the Accountants' involvement in Grogg's employment as management advisory, financial advisory, or consulting services because each technical rubric falls within the statutory definition of 'Practice of Accountancy.' As in *Heaton & Eadie*, Bambi's clearly relied on the Accountants' unique set of skills to manage the accounting part of its business. Consequently, when they sought to hire an in-house accounting officer, Bambi's consulted these professionals regarding the content of the position and training. Because Bambi's Complaint now arises over the quality of the Accountants' services as certified public accountants, we hold that Bambi's cause in negligence resulted from an agreement to provide professional accounting services and is therefore governed by the Accountancy's Act

statute of limitations. *See* I.C. § 25–2.1–15–1.[3]

## B. *Accrual of the One–Year Statute of Limitations*

■ Narrowing their main argument, Bambi's asserts that even if the one-year statute of limitations of the Accountancy Act is applicable, the trial court used the wrong accrual date. Particularly, Bambi's alleges that as its Complaint focuses on the Accountants' negligence, the date on which Bambi's discovered Grogg's embezzlement is not determinative. Instead they maintain that the statute of limitations accrues on the date Bambi's knew or should have known that the Accountants' negligence allowed Grogg's embezzlement to happen.

■ With respect to the statute of limitations, the Accountancy Act states:

An action under this chapter must be commenced by the earlier of the following:

(1) One (1) year from the date the alleged act, omission, or neglect is discovered or should have been discovered by the exercise of reasonable diligence.

(2) Three (3) years after the service for which the suit is brought has been performed or the date of the initial issuance of the accountant's report on the financial statements or other information.

I.C. § 25–2.1–15–2. As our holding in *KPMG* emphasizes, this statute "provides clear direction as to when a claim accrues and the period within which that claim must be brought" by triggering upon discovery of the "act, omission or neglect" rather than discovery of a cause of action. *KPMG*, 784 N.E.2d at 1061. Thus, by incorporating a discovery rule, the one-year limitations period is tolled until the date that the alleged negligence is discovered or should have been discovered by the exercise of reasonable diligence. *Crowe, Chizek, and Co., LLP v. Oil Technology, Inc.*, 771 N.E.2d 1203, 1207 (Ind. Ct.App.2002), *reh'g denied, trans. denied.*

In this case, the evidence designates that by March 14, 2003, Bambi's discovered that Grogg had, in the course of her employment, embezzled an amount in excess of $76, 900.00. The record also reflects that the Accountants' letter of engagement establishes that at all times before, during and after Grogg's employment at Bambi's, the Accountants provided accounting services to Bambi's, including assisting Bambi's bookkeeper in adjusting the books of accounts. Furthermore, as we stated before, when

---

**3.** We acknowledge that in support of its argument, Bambi's refers us to the federal decision in *Ernst & Young LLP v. Baker O'Neal Holdings, Inc. et al.*, 2004 WL 771230 (S.D.Ind. March 24, 2004). However, Bambi's suggestion to look beyond our State's borders for interpretation of a State statute is not necessary. Even though Indiana's precedential case law is extremely limited, our research revealed three recent decisions related to the issue before us. *See Heaton & Eadie Prof'l Servs. Corp. v. Corneal Consultants of Indiana, P.C.*, 841 N.E.2d 1181 (Ind.Ct.App. 2006); *KPMG, Peat Marwick, LLP v. Carmel Financial Corp.*, 784 N.E.2d 1057 (Ind.Ct. App.2003); *Crowe, Chizek, and Company, LLP v. Oil Technology, Inc.*, 771 N.E.2d 1203 (Ind. Ct.App.2002), *reh'g denied, trans. denied.*

While *Ernst & Young* is undoubtedly instructive, it is not a reported decision and it certainly is not binding precedent for this court. *See Miller v. Dilts*, 463 N.E.2d 257, 263 (Ind.1984). Furthermore, the decision reached in *Ernst & Young* appears to be incongruous to our holding in *Heaton & Eadie*. First, *Ernst & Young* revolves around a motion to dismiss, not a summary judgment motion. *Ernst & Young LLP*, 2004 WL 771230 at [*]11. Furthermore, unlike *Heaton & Eadie*, the district court found that the relevant inquiry to apply the one-year statute of limitations was "significantly narrower" than merely an engagement in the "practice of accountancy." *Id.* Upon review, we find *Heaton & Eadie* to reach the better result.

Bambi's sought to structure an in-house accounting position, they turned to Moriarty for advice and training.

Indiana courts have held that the discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred. *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind.Ct.App.2006).[4] In other words, the discovery rule only postpones the statute of limitations by belated discovery of key facts, not by delayed discovery of legal theories. *Id.* As such, a plaintiff has a duty under the discovery rule to exercise reasonable diligence to discover the negligent acts or omissions. *Id.* The exercise of reasonable diligence means simply that an injured party must act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. *Id.*

Here, Bambi's had knowledge of pertinent facts that reasonably put them on notice that some claim might exist against the Accountants at the moment they discovered Grogg's embezzlement. Because Bambi's had relied on the Accountants in the structuring of the position and in the training of Grogg, they necessarily must have been aware that a claim might exist against the Accountants. Furthermore, as the Accountants continuously provided services to Bambi's during Grogg's employment, they could have questioned why the Accountants failed to alert them of this criminal activity.

Even if we were to award merit to Bambi's claim that they needed time to investigate whether the Accountants' potential negligence had allowed for the series of thefts, the Accountants appropriately and correctly point out that the negligent failure to detect theft logically is discovered when the theft is discovered. As we stated in *Perryman*, the law does not require a smoking gun in order for the statute of limitations to commence. *Id.* at 689. Accordingly, as Bambi's did not file their negligence claim against the Accountants until July 2, 2004, which is well outside the one-year limitations period from the discovery of the embezzlement on March 14, 2003, we conclude that Bambi's claim is barred.

### C. Continuous Representation

Nevertheless, our inquiry does not end with our finding that the Accountancy Act and its narrow statute of limitations are applicable in the case at bar. Advancing an issue of first impression, Bambi's now requests this court to toll the statute of limitations by applying the continuing representation doctrine to the accounting profession.[5]

---

4. *Perryman's* discussion focuses on the statute of limitations applicable to an action based upon an insurance contract, I.C. § 34–11–2–11, which differs from the statute of limitations applicable in this case. However, I.C. § 34–11–2–11 contains the same discovery rule that is at issue in this case. The only difference being that I.C. § 25–2.1–15–2(1) expressly contains the discovery rule, while the discovery rule in I.C. § 34–11–2–11 is implicit. *See Perryman*, 846 N.E.2d at 688.

5. In partial support of their argument, the Accountants rely on *Crowe, Chizek, and Co., LLP. v. Oil Technology, Inc.*, 771 N.E.2d 1203, 1210 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* However, in *Crowe*, we applied the doctrine of continuing wrong to the accounting profession, not the doctrine of continuous representation. The doctrine of continuing wrong is applied when an entire course of conduct combines to produce an injury. *Id.* The statute of limitations is tolled until the plaintiff learns of facts that should lead to

In Indiana, we recently adopted this doctrine to the legal profession. In *Biomet, Inc. v. Barnes & Thornburg*, 791 N.E.2d 760, 765 (Ind.Ct.App.2003), *trans. denied*, we held that "under the continuous representation doctrine, the statute of limitations does not commence until the end of an attorney's representation of a client in the same matter in which the alleged malpractice occurred." *Id.* Based on the rationale of the rule, the *Biomet* court found the introduction of the rule appropriate in those jurisdictions adopting the damage and discovery rules. *Id.* at 766. We considered the policy reasons for adopting the rule to be compelling as it allowed an attorney to continue his efforts to remedy a bad result, even if some damages have occurred and even if the client is fully aware of the attorney's error. *Id.* As such, we reasoned the doctrine to be fair to all persons concerned: the attorney has the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages, while the client is not forced to terminate this relationship, though the option exists. *Id.*

██ In line with the *Biomet* decision, Bambi's now requests us to expand the continuous representation rule to the accounting profession. A survey of our sister states reveals that the continuous representation doctrine is made readily applicable to accountants.[6] Because, "a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered, most jurisdictions have found the application of the doctrine to be meritorious. *Hall & Co., Inc. v. Steiner and Mondore, et al,* 147 A.D.2d 225, 229, 543 N.Y.S.2d 190 (1989). Essentially, the case law has established that the continuous representation must be in connection with the specific matter directly in dispute, and not merely the continuation of a general professional relationship. *Ackerman v. Price Waterhouse,* 252 A.D.2d 179, 205, 683 N.Y.S.2d 179 (1998). Thus, the mere recurrence of professional services does not constitute continuous representation where the later services performed are not related to the original services. *Id.*

Following *Biomet* and the persuasive precedents of foreign jurisdictions, we find the expansion of the continuous representation doctrine to the accounting profession in Indiana to be merited. As in *Biomet,* the policies favoring the application of the rule are compelling. *See Biomet, Inc.* 791 N.E.2d at 766–67. First, the continuous representation rule avoids the

---

discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point. *Id.* On the other hand, the doctrine of continuous representation tolls the statute of limitations until the end of an attorney's representation of a client in the same matter in which the alleged malpractice occurred. *Biomet, Inc. v. Barnes & Thornburg,* 791 N.E.2d 760, 765 (Ind.Ct.App.2003). Thus, the continuous wrong doctrine focuses on the continuing nature of the act that was immediately responsible for the injury while the continuous representation doctrine is not concerned with the nature of the wrong-producing act, but with the continuing representation of the professional in the matter which formed the basis of the alleged professional malpractice.

**6.** *See e.g. Burns v. McClinton,* 135 Wash.App. 285, 143 P.3d 630 (2006); *Ackerman v. Price Waterhouse,* 252 A.D.2d 179, 683 N.Y.S.2d 179 (1998); *Fred Smith Plumbing and Heating Co. v. Christensen,* 242 A.D.2d 429, 662 N.Y.S.2d 248 (1997); *Zaref v. Berk & Michaels, P.C.,* 192 A.D.2d 346, 595 N.Y.S.2d 772 (1993); *Wynn v. Estate of Holmes,* 815 P.2d 1231 (Okla.Ct.App.1991); *Hall & Company, Inc. v. Steiner and Mondore,* 147 A.D.2d 225, 543 N.Y.S.2d 190 (N.Y.App.Div.1989); *Wilkin v. Dana R Pickup & Co.,* 74 Misc.2d 1025, 347 N.Y.S.2d 122 (1973).

disruption of the accountant-client relationship and gives accountants the chance to remedy or mitigate mistakes before being sued. Second, this rule does not limit the client's ability to seek redress immediately. The client may terminate the relationship without providing the accountant an opportunity to mitigate damages, and make a claim of malpractice within one year of the date of termination. At the same time, the rule prevents the client from having to adopt inherently different litigation postures, thereby compromising the success of both proceedings, by defending the accountant's actions in the appeal of the underlying action in which the alleged malpractice was committed and contesting the accountant's actions in the malpractice action.

Although we recognize that the legislature requires claims to be pursued within a prompt and timely manner by limiting the period of limitations to one year, we note that the continuous representation rule is consistent with this purpose.

> Stale claims will be prevented when the plaintiff is not duly diligent following termination of the relationship. In the interim, a claim still in litigation cannot be considered stale. The [accountant]-client relationship is preserved as fully as possible, guaranteeing the client that the [accountant] will put forth a better effort to preserve the client's interest. Speculative litigation is also avoided as clients will not necessarily be required to file suit before the [accountant] attempts to avoid any damage to the client's interests.

*Id.* at 767.

■ Accordingly, because we now adopt the continuous representation doctrine as an exception to our discovery rule, in a situation where the accountant continues to represent the client in the same matter in which the alleged malpractice occurred, the date of the accrual begins at the termination of an accountant's representation of the client in the specific matter in which the alleged malpractice occurred. This rule is necessarily limited to the accountant's representation in the same, specific matter. Expanding the doctrine to apply to an accountant's general ongoing representation of the client as a whole would conflict with our rationale for adopting the rule in the first place. The purpose of the rule is to give accountants an opportunity to remedy their errors, establish that there was not error, or attempt to mitigate the damage caused by their errors, while still allowing the aggrieved client the right to later bring a malpractice action, and not to circumvent the statute altogether by continuously representing the client. *See Burns v. McClinton*, 135 Wash.App. 285, 143 P.3d 630, 634–35 (2006).

Bambi's asserts that the Accountants continued to provide professional services to Bambi's long after Bambi's instigated criminal proceedings against Grogg. Specifically, Bambi's claims that the Accountants continued to remain involved in the investigation of Grogg's embezzlement in the months following her termination and arrest. As the continuous representation rule only tolls the statute of limitations during the specific matter directly in dispute, we next need to determine what is meant by 'specific matter.'

■ In *Ackerman*, 252 A.D.2d at 205, 683 N.Y.S.2d 179, the client alleged that an accounting firm had repeatedly used an improper accounting method and failed to disclose to the client the risks associated with that method. When the internal revenue service began to scrutinize that method, the firm agreed to serve the client through the audit process and represented that it was "handling" the problem. *Id.* The outcome, however, was unfavorable to the client. A malpractice suit ensued, to which the accounting firm raised the stat-

ute of limitations as a defense. *Id.* The New York court found "ample evidence" of continuous representation in the matter in dispute, and held that the firm's motion to dismiss based on the statute of limitations was properly denied. *Id.*

By contrast in *Burns,* 143 P.3d at 636, the Washington court of appeals found that there was no distinct accounting matter that justified the application of the continuous representation doctrine. Analyzing Burns' complaint, the court opined that Burns did not allege that his accountant breached their contract by failing to provide adequate accounting services or letting him down in any particular matter. *Id.* Rather, the court concluded that "however styled, the claim by Burns arose out of [the accountant] charging him more than they had agreed for accounting services." *Id.* Thus, the court reasoned that the wrong occurred during the general course of an ongoing professional relationship, not in continued representation with respect to a particular undertaking or specific transaction in which the accountant had committed a professional error. *Id.*

In the case at bar, Bambi's Complaint contends "Moriarty and Dahms & Yarian so negligently performed their duties as certified public accountants for [Bambi's] as to cause the damages to [Bambi's] alleged in this [C]omplaint." (Appellant's App p. 17). However, in their brief, Bambi's appears to tailor their specific negligence claim more narrowly by focusing on Moriarty's training and supervision of Grogg, and the Accountants subsequent involvement in detecting Grogg's embezzlement methods after her termination and arrest.

Regardless of the characterization of Bambi's Complaint, we do not find the continuous representation doctrine to be applicable. Even though Bambi's narrow phrasing [7] of the dispute might be specific for purposes of the doctrine, nevertheless, Bambi's did not have to choose between engaging in speculative litigation and waiting to see if things might turn out all right after all, as in *Ackerman.* As soon as Bambi's found out about Grogg's embezzlement, the company terminated her and instigated criminal proceedings which led to her ultimate conviction. At that point, there was nothing the Accountants could have done in an ongoing professional capacity, that is, as the representative of Bambi's in any particular matter, to make the situation turn to Bambi's advantage. The embezzled money was lost, the harm was done, and could not be undone. Thus, at the moment Grogg completed the embezzlement and was terminated by Bambi's, the Accountants had no more opportunity to remedy their error, if any, nor could the Accountants mitigate the damage caused by their error, if any error could be established in the first place. Thus, as Bambi's claim is not tolled by the continuous representation doctrine, we find that Bambi's complaint is barred by the one-year statute of limitations.

## CONCLUSION

Based on the foregoing, we find that the trial court properly applied the statute of limitations contained in the Accountancy Act to bar Bambi's negligence claim against its Accountants. Thus, we affirm the trial court's summary judgment.

Affirmed.

BAILEY, J., and MAY, J., concur.

---

7. We find it abundantly clear that Bambi's Complaint without more is not sufficient as it merely refers a wrong committed during the continuation of a general professional relationship.