NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued May 5, 2011

Decided July 18, 2011

**Before**

Hon. Daniel A. Manion,  *Circuit Judge*

Hon. Diane P. Wood,  *Circuit Judge*

Hon. Ann Claire Williams,  *Circuit Judge*

| | |
|---|---|
| No. 10-3863 | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| Walter L. Morgan, | |
| *Plaintiff-Appellant*, | No. 09 CV 00399 |
| *v.* | **Sarah Evans Barker**, *Judge*. |
| Ann J. Fennimore and Fennimore and Associates, P.C., | |
| *Defendants-Appellees*. | |

**O R D E R**

Walter Morgan had the good fortune of winning the Ohio lottery; unfortunately,  for the next twenty years his accountant failed to file an Ohio tax return on the annual distribution from his winnings. Morgan learned of this fact years later when the state sent him a bill for almost two million dollars. Not surprisingly, he sued his accountant for malpractice. The district court found that Morgan's claims were barred by the statute of limitations and granted summary judgment for the accountant.  Morgan appeals, and we affirm.

I.

In 1986, Walter Morgan won twenty-five million dollars in the Ohio lottery. At the time, a lump sum payment was not available, so Morgan's winnings were spread out over twenty years, with Morgan receiving a little over 1.2 million dollars a year. Shortly after winning the lottery, Morgan's wife asked that the winnings be put in both their names. He obliged. And a year or so later, she divorced him, cutting his annual payment down to a little over $600,000. Among other things, he invested some of that amount in a local furniture business that he ran with a cousin.

At the time that Morgan won the lottery, he lived and worked in Indiana and had a local accountant. Even with his new fortune, he remained in Indiana and kept the same accountant for taxes and other matters. The original accounting firm that Morgan used was later purchased by Ann Fennimore, a CPA. And in 1990, she took over Morgan's account, which included his winnings and the furniture business. In at least one instance Fennimore proved astute: she discovered that Morgan's cousin was stealing from the company and she let Morgan know about it.

But while Fennimore performed well ferreting out the cousin's fraud, her performance on tax returns left much to be desired. Since Morgan's winnings were paid annually, each year the Ohio lottery sent him a substantial check after first withholding taxes for the IRS and Ohio. Ohio also sent Morgan a W–2G form that documented the lottery winnings for tax purposes. And each year Morgan gave Fennimore the W–2G form. Yet, in spite of the fact that Fennimore received a W–2G every year and Ohio withheld taxes on Morgan's winnings, Fennimore failed to prepare and file Ohio taxes for Morgan. At her deposition, she could not offer any explanation for this. For what it's worth, though, Morgan's initial accountant didn't file Ohio taxes on his lottery winnings either. Whatever the reason, for almost twenty years neither Fennimore nor the state of Ohio caught on to the error.[1]

In 2003, Morgan's life changed. He divorced his second wife, moved from Indiana to Washington state, and transferred his remaining lottery winnings to an investment firm. In exchange for the rights to his remaining winnings, he received an annuity and was no longer responsible for paying taxes on the lottery income. From then on, the investment firm was responsible for paying Ohio taxes on the lottery winnings. Although he moved to Washington, Morgan continued to use Fennimore (in Indiana) for his annual tax return—income that at this point did not include lottery winnings.

---

[1] And we don't know whether Morgan's ex-wife paid Ohio income taxes on her share of the winnings.

During the summer of 2008 Morgan received a letter from the state of Ohio notifying him that he had overpaid his taxes the previous year by three thousand dollars and asking whether he wanted a check for that amount or to have it credited to his taxes the following year. Morgan opted for the check. But apparently what appeared to be a favorable audit caused the state to further scrutinize his account. So instead of receiving a check, Morgan received a notice that the three thousand dollars had been credited to his outstanding tax bill of almost two million dollars. The notice also asked for prompt payment of the remaining sum. Morgan actually owed less than a half-million dollars in back taxes; the bulk of the total consisted of interest and penalties.

After reading the notice, Morgan immediately called Fennimore to determine what had happened. Fennimore promised to handle the matter and Morgan granted her power of attorney to deal directly with the state of Ohio. After many unexplained delays on Fennimore's part and with a looming deadline for challenging the tax assessment, Morgan hired an attorney, who was able to negotiate the tax bill down to $250,000. Morgan paid the tab, and in 2009 sued Fennimore in Indiana for malpractice.

Before the district court, Fennimore denied any liability; in addition, she argued that under Indiana law Morgan's claims were barred by its statute of limitations. Morgan, for his part, argued that Ohio law and its statute of limitations should apply. The distinction is critical to Morgan's claim. In Ohio, the statute of limitations for accounting malpractice claims is four years from the time the party learns of the malpractice, while in Indiana it is three years from the date the accounting service is provided. Ind. Code § 25–2.1–15–2; Ohio. Rev. Code § 2305.09. Fennimore's last allegedly negligent act was in April 2004 when she failed to prepare and file Morgan's 2003 Ohio state taxes with the rest of the taxes she prepared for him that year. Yet it wasn't until over four years later, in July 2008, that Morgan learned of her negligence, and he didn't file a lawsuit until April 2009. So, under Ohio law Morgan's claims could go forward, but under Indiana law his claims were barred unless the statute of limitations was tolled by some equitable doctrine. In a very thorough order, the district court found that under Indiana's choice-of-law rules, Indiana law applied to Morgan's claims and that his claims were time-barred and not otherwise equitably tolled—namely by the continuous-representation doctrine.

## II.

On appeal, Morgan challenges the district court's finding both that Indiana law applies to his claims and that his claims are not tolled by the continuous-representation doctrine.[2] We

---

[2]At oral argument, Morgan also argued that the statute of limitations had not run because he was also claiming accounting malpractice during the years 2006–2008. That

review the granting of summary judgment de novo. *Carlisle v. Deere & Co.*, 576 F.3d 649, 653 (7th Cir. 2009).

When a federal court hears a diversity case it applies the forum state's choice-of-law rules. *Carlisle*, 576 F.3d at 653. Here, the forum state is Indiana, which employs a modified lex loci delicti analysis. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002). Under it, the substantive law of the place of the wrong will usually govern, "unless the state where the tort occurred is an insignificant contact." *Simon v. United States*, 805 N.E.2d 798, 804 (Ind. 2004). Then Indiana looks to the state with the most significant contacts. *Id.* at 805.

While there is room for debate about whether Indiana courts would consider Indiana or Ohio the place of the wrong, the answer to that question is not the deciding factor in this case. Rather, this is overwhelmingly an Indiana case: Fennimore's office is in Indiana, during much of the relevant time period Morgan lived in Indiana, Morgan and Fennimore's relationship was centered in Indiana, and Fennimore's failure to properly prepare and file Morgan's taxes occurred in Indiana. Thus, Indiana has the most significant contacts with this case. And under Indiana's choice-of-law rules, we apply Indiana law.

Under Indiana law, Morgan had to file his claims the earlier of (1) one year from the date the alleged act or omission is discovered or should have been discovered, or (2) three years after the service for which the suit is brought was performed. Ind. Code § 25–2.1–15–2. The "three-year limitation period contains no discovery rule." *Crowe, Chizek, & Co., v. Oil Tech., Inc.*, 771 N.E.2d 1203, 1207 (Ind. Ct. App. 2002). Fennimore's last negligent act was completed in April 2004 when she failed to prepare and file Morgan's 2003 Ohio tax return with the other tax returns she prepared for him that year—presumably his federal and Indiana taxes. But Morgan did not file his lawsuit until April 2009—five years later. So, his claims are barred unless the statute of limitations is somehow tolled.

Morgan argues that the statute of limitations should be tolled under the continuous-representation doctrine. *Biomet, Inc. v. Barnes & Thornhurg*, 791 N.E.2d 760, 765–68 (Ind. Ct. App. 2003). Under it, the statute of limitations is tolled when there is a negligent act and an ongoing professional service attached to the specific negligent act that is in dispute—the mere continuation of a general, professional relationship is not enough. *Bambi's Roofing, Inc. v. Moriarty*, 859 N.E.2d 347, 357 (Ind. Ct. App. 2006). To determine whether the doctrine applies, Indiana courts focus on "the matter which formed the basis of the alleged professional malpractice." *Id.* at 356. They then look to see if there was an ongoing, professional relationship tied to that precise matter. *Id.* For example, if an accountant makes a mistake

---

argument was not clearly presented to the district court nor was it raised in his briefs, and it is thus waived. *See Awe v. Ashcroft*, 324 F.3d 509, 512–13 (7th Cir. 2003).

setting up a client's tax shelter that the IRS later deems invalid and the accountant then attempts to defend the client before the IRS concerning that alleged error, the statute of limitations is tolled during the course of the representation tied to the faulty tax shelter. *E.g.*, *Ackerman v. Price Waterhouse*, 252 A.D. 2d 179 (N.Y. 1998). The doctrine does not, however, toll the statute of limitations when there is an alleged act of malpractice, and subsequently there remains some general, ongoing professional relationship between the client and the accountant. *Bambi's Roofing, Inc.*, 859 N.E.2d at 358. So, if after the tax shelter is deemed invalid the accountants still prepare some tax forms or perform a general audit every year, that wouldn't be a enough to hold that the doctrine applies. *Id.*

Morgan argues that the doctrine should apply for two reasons. First, he argues that the doctrine applies because Fennimore continued to do his taxes until 2008. Second, he argues that the doctrine applies because when he called Fennimore about the Ohio tax bill in the summer of 2008 she looked into the matter, but did not really do anything to fix her repeated errors. He claims that her services at that time constitute a continuous representation that was directly tied to the malpractice—namely, her failure to file Ohio taxes. Concerning Morgan's first argument, the fact that Fennimore continued to do his taxes until 2008 simply means that they had a general, ongoing professional relationship. Each year he had income—unrelated to the lottery—and each year she prepared his taxes for him. These services were not tied in any way to her failure to file Ohio taxes over the years before 2004, and the doctrine is "necessarily limited to the accountant's representation in the *same, specific* matter" as the alleged malpractice. *Bambi's Roofing*, 859 N.E.2d at 358 (emphasis added)). Thus, the tax returns she prepared and filed for him after 2004 do not toll the statute of limitations.

Morgan's second argument is that his call to Fennimore in the summer of 2008 about his Ohio tax bill for the years 1986–2003 constituted a continuous representation. He's correct that this phone call and Fennimore's "efforts" to clear up the problem were tied to the specific act of malpractice: her failure to prepare and file the Ohio tax returns. The problem is that by the time Morgan learned of Fennimore's negligence and contacted her, the statute of limitations had expired. And a single act of representation on a related issue four years after Fennimore failed to properly prepare and file Morgan's taxes, and at least one year after the statute of limitations had already expired, is insufficient to find that the continuous representation doctrine applies. *See Maurice W. Pomfrey & Associates, Ltd. v. Hackock & EstaBrook, LLP*, 50 A.D.3d 1531 (N.Y. App. Div. 2008) ("[Plaintiff] did not seek or obtain defendant's services in connection with the employment agreement until March 2000, more than three years after the statute of limitations . . . expired [and therefore the continuous representation doctrine did not apply.]"); *cf In re Paternity of S.J.J.*, 877 N.E.2d 826, 829 (Ind. Ct. App. 2007) (holding "a new statute of limitations cannot revive a claim which was foregone under the prior statute of limitations before passage of the new one" (quotation omitted)); *Hughes Aircraft Co. v. ex rel. Schumer*, 520 U.S. 939, 950 (1997) (noting that "extending a

statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action"). Indeed, Morgan is not really asking us to apply the continuous representation doctrine; he is asking us to re-write it, something we are not inclined to do—"Federal courts are loathe to fiddle around with state law." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000).

## III.

In sum, the district court correctly determined that under Indiana's choice-of-law rules Indiana law governs Morgan's claims. In addition, the district court correctly determined that Morgan's claims were barred by the Indiana statute of limitations. Accordingly, the judgment of the district court is affirmed.