## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 23 2016, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William Perry McCall, III
Mosley Bertrand and McCall
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pinnacle Properties Development Group, LLC, *Appellant-Defendant,* <br><br> v. <br><br> Alexandra Gales, *Appellee-Plaintiff* | June 23, 2016 <br><br> Court of Appeals Case No. 10A01-1512-SC-2271 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Kenneth R. Abbott, Magistrate <br><br> Trial Court Cause No. 10C03-1508-SC-1278 |

**Crone, Judge.**

# Case Summary

Pinnacle Properties Development Group, LLC ("Pinnacle") appeals a $975 judgment in favor of residential tenant Alexandra Gales in her small claims action for the return of rent, security deposit, utility deposit, and administrative fees paid to Pinnacle, as well as damages for pain and suffering. We affirm.

# Facts and Procedural History

The facts most favorable to the judgment are as follows. In November 2014, Gales submitted a leasing application for an apartment at one of Pinnacle's residential properties. She was accepted and selected a floorplan suitable for her and her four-year-old daughter. On November 26, 2014, she paid Pinnacle a $250 security deposit and a nonrefundable $250 administration fee. The leasing agent gave her a unit number, but she was not allowed to view her unit before her scheduled move-in date of December 5, 2014.

On move-in day, Gales went to the leasing office, where she signed the lease agreement and paid one month's rent of $625 plus a $100 utility deposit. The leasing agent accompanied her to her unit to conduct a walk-through inspection. When she entered her unit, she immediately noticed that there was no electricity. She was told that she should contact the power company to initiate service but later discovered that service could not be initiated because the meter had been removed. During her walk-through, she also observed a shattered sliding glass door and a dirty toilet that was devoid of water. The

leasing agent turned on the water valve to the toilet, and it flooded the bathroom and soaked the carpet.

[4] The leasing agent proposed moving Gales to an adjacent unit, but the floorplan did not meet Gales's specifications. The agent also proposed postponing the move-in and prorating the rent until Pinnacle could rectify the issues. That same day, Gales told the leasing agent that she wanted to cancel the lease and receive a refund because her unit was not in a habitable condition. The leasing agent agreed to the refund and cancellation.

[5] Gales repeatedly attempted to contact Pinnacle's owner about her refund, but her messages were not returned. In August 2015, she filed a complaint against Pinnacle in small claims court, seeking a refund of her rent, security deposit, utility deposit, administration fee, and damages for pain and suffering, all totaling $2500. She attached a copy of the lease agreement to her complaint.

[6] After a September 2015 hearing, the trial court concluded that Gales was entitled to the return of the $625 for rent, plus the $250 security deposit and $100 utility deposit. In total, the trial court entered judgment in Gales's favor for $975, plus court costs and post-judgment interest. Pinnacle filed a motion to correct error, which the trial court denied. Pinnacle now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

[7] Pinnacle claims that the trial court committed reversible error in awarding Gales $975 plus costs and interest. As a preliminary matter, we observe that

Gales has not filed an appellee's brief. Where an appellee fails to file a brief, we do not undertake to develop arguments on her behalf; rather, we may reverse upon a prima facie showing of reversible error. *Morton v. Ivacic*, 898 N.E.2d 1196, 1199 (Ind. 2008). Prima facie error is error "at first sight, on first appearance, or on the face [of] it." *Id.*

[8]     We review a trial court's denial of a motion to correct error using an abuse of discretion standard. *Garrett v. Spear*, 24 N.E.3d 472, 473 (Ind. Ct. App. 2014). Where, as here, the appeal involves "claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A); *see also Morton*, 898 N.E.2d at 1198-99. "This deferential standard of review is particularly important in small claims actions, where trials are informal, 'with the sole objective of dispensing speedy justice' between parties according to the rules of substantive law." *Id.* at 1199 (citation omitted).

[9]     Pinnacle predicates its arguments in large part on Gales having signed the lease agreement and inspection form. Indiana courts have long recognized the contractual nature of leases and the applicability of contract law to leases. *Stewart v. TT Comm'l One, LLC*, 911 N.E.2d 51, 55 (Ind. Ct. App. 2009), *trans. denied.* Contract interpretation is a question of law which we review de novo.

*Brill v. Regent Comm'ns, Inc.*, 12 N.E.3d 299, 306 (Ind. Ct. App. 2014), *trans. denied*.

[10]    Significantly, however, Pinnacle has failed to submit either the lease agreement or the inspection form for our review and, in fact, has not filed an appellate appendix at all.[1]  While it would be within our purview to dismiss Pinnacle's appeal for providing a highly deficient record, we nevertheless choose to address the merits and conclude that we may affirm the judgment of the trial court on the record before us.[2]

[11]    While we emphasize that we cannot review agreements that have not been submitted on appeal,[3] we note that the trial court did have access to the lease agreement, which was attached to Gales's complaint (also not submitted on appeal).  In its order denying Pinnacle's motion to correct error, the trial found in pertinent part as follows:

---

[1]  Indiana Appellate Rule 49(B) states that a party's "failure to include any item in an Appendix shall not waive any issue or argument."  Even so, Appellate Rule 49(A) clearly contemplates that an appendix will be filed:  "The appellant *shall* file its Appendix with its appellant's brief."  (Emphasis added.)  Similarly, Appellate Rule 50(A)(1) reads, "The purpose of an Appendix in civil appeals ... is to present the Court with copies of only those parts of the record on appeal that are necessary for the Court to decide the issues presented."  In addition to the chronological case summary, appealed order, pleadings, and various other documents, Rule 50(A)(2) requires that the appendix include "other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]"

[2]  *See Hughes v. King*, 808 N.E.2d 146, 147 (Ind. Ct. App. 2004) (dismissing appeal of summary judgment where appellant failed to provide motions for and in opposition to summary judgment as well as copies of designated evidence); *cf.*, *Bambi's Roofing, Inc. v. Moriarty*, 859 N.E.2d 347, 352 (Ind. Ct. App. 2006) (noting highly deficient record that impeded de novo review but opting to address merits rather than dismiss appeal).

[3]  In its brief, Pinnacle cites paragraph 14 of the lease agreement, which purportedly addresses the tenant's verification that the premises was in a good and clean condition.  However, we have no copy of the lease before us and nevertheless note that Gales had not been afforded the opportunity to see her unit before she signed the lease.

2) Prior to December 5, 2014, the Plaintiff applied to be a tenant with the Defendant/landlord. Although she was not allowed to view the specific apartment, she was told that she would be receiving apartment #31.

3) On November 26, 2014, the Plaintiff paid to the Defendant the amount of $250.00 for a security deposit, and $250.00 as an administrative fee.

4) On December 5, 2014, the Plaintiff went to the leasing office of the Defendant to execute the Lease Agreement and she also paid one month's rent in the amount of $625.00 and a utility deposit of $100.00. Upon payment, the leasing agent escorted the Plaintiff to the apartment for the first time. Upon entering the apartment the parties noticed that there was not electrical service for the apartment (no existing meter), the sliding glass door was shattered, and the water to the toilet was not flowing.

5) The leasing agent turned the water valve to the toilet on and water began flooding the floor of the apartment bathroom, soaking the carpet.

6) After discussing the potential of moving the move-in date and prorating rent, the Plaintiff stated that because the apartment was not in livable condition she wanted to cancel the lease and receive a refund. She testified that the leasing agent agreed to cancel the lease and refund her money.

7) At trial, Bob McEwen testified as the representative of the Defendant. He stated that all he knows personally about was the toilet problem. He also stated that he had no personal knowledge about any agreement to grant a refund, or not to grant a refund.

8) The Plaintiff's testimony as to the refund agreement was therefore not contradicted by any witnesses.

9) After trial the Court granted a refund of the lease payment of

$625.00 as the Plaintiff never moved into the leased premises before the agreement to terminate the lease and refund her money. The Court also granted a refund of the $250.00 security deposit and the $100.00 utility deposit as she could not have caused any damages to the premises or used any utility services.

10) The Court did not grant a refund of the administrative fee, as such fee was presumably earned prior to execution of the lease agreement for matters such as taking and reviewing the application, preparation of the lease, and other similar matters.

11) Because of the undisputed evidence that the Plaintiff and Defendant agreed to a cancellation of the lease agreement and refund of her monies, the Defendants['] arguments that the Plaintiff breached a valid and binding contract, and that her actions resulted in a premature termination of the rental agreement are unfounded.

Appellant's Br. at 9-10.

[12] The evidence presented at the hearing supports the trial court's findings and conclusions. Gales testified concerning her payment of the security deposit, administration fee, first month's rent, and utility deposit, all before being allowed to enter and conduct a walk-through inspection of her unit. When she discovered the lack of electricity, shattered sliding door, and flooding from the toilet, she listed the defects on the inspection form and apparently signed it, but she made it known to the leasing agent that she could not move in under such conditions. The alternative of moving to another unit was unsatisfactory due to that unit's unsuitable floorplan. The five-day potential postponement of occupancy and proration of rent simply would not work, as the lack of electrical

service was further complicated by her discovery that the electric company could not initiate service due to the absence of a meter.

[13] Most importantly, Gales notified the leasing agent of her cancellation of the lease and expectation of a refund due to the uninhabitable premises. She testified that the leasing agent agreed to the cancellation and refund. This testimony was never controverted at the hearing because the leasing agent was neither present to testify nor was her testimony otherwise obtained. Instead, Pinnacle offered the testimony of a Pinnacle employee who had no personal knowledge about any of Gales's issues except for the toilet, as he had helped the maintenance man repair the valve.

[14] Moreover, Gales signed the lease with the reasonable expectation of receiving a habitable leasehold. *See Breezewood Mg't. Co. v. Maltbie*, 411 N.E.2d 670, 675 (Ind. Ct. App. 1980) (holding that tenants had reasonable expectation that their basic housing needs would be met: heating, plumbing, electricity, and structural integrity and that landlord breached implied warranty of habitability for failing to provide and maintain a habitable leasehold). She did not receive a habitable leasehold and could not have been expected to move herself and her four-year-old child into a flooded, unheated, and unlit unit, especially in December. Her attempts to follow up with Pinnacle's owner were ignored. As for the refund, the meager record supports the trial court's conclusion that she was entitled to $625 for her first month's rent, as she never lived in the uninhabitable unit; the $250 for the security deposit, as she did not cause any damage to a unit in which she never lived; and $100 for the utility deposit, as

she never initiated any such services. Pinnacle does not specifically contest the award of costs and post-judgment interest. In short, the evidence is sufficient to support the trial court's judgment. Accordingly, we affirm.

[15] Affirmed.

Najam, J., and Robb, J., concur.