KPMG, PEAT MARWICK, LLP (properly known as KPMG, LLP), Appellants–Defendants,

v.

CARMEL FINANCIAL CORPORATION, INC., and Thomas P. Sheehan, Appellees–Plaintiffs.

No. 49A02–0206–CV–511.

Court of Appeals of Indiana.

March 18, 2003.

1058

David E. Wright, Ronald G. Sentman, Arend J. Abel, Indianapolis, IN, Attorneys for Appellants.

Ronald C. Smith, Peter S. Kovacs, David I. Rubin, Indianapolis, IN, Attorneys for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Defendant–Appellant KPMG, Peat Marwick, LLP (KPMG) appeals the trial court's denial of its motion for summary judgment and the grant of Plaintiffs'-Appellees' motion for partial summary judgment.

We reverse and remand with instructions to enter summary judgment in favor of KPMG.

KPMG presents two issues for our review which we consolidate and restate as one: whether the trial court erred by de-nying KPMG's motion for summary judgment.

Carmel Financial Corporation, Inc. (Carmel) hired KPMG, an accounting firm, to provide various accounting services to Carmel. KPMG performed these services for Carmel from 1988 through 1996. In 1997, an employee of Carmel discovered the alleged negligence by KPMG. Following initial negotiations and discussions, the parties signed a "Standstill Agreement" on October 13, 1999. This agreement, although stating that it did not revive any claims which may have already been barred by the statute of limitations, laches, or similar doctrines, states that any claim made by Carmel against KPMG relating to the services it provided to Carmel would be deemed to have been made by May 20, 1999.

On September 12, 2000, Carmel filed suit in federal court. However, that lawsuit was later dismissed for lack of diversity jurisdiction. On January 12, 2001, Carmel filed its complaint in the trial court. Carmel subsequently filed a motion for partial summary judgment to which KPMG responded in kind with its own motion for summary judgment. Following a hearing, the trial court granted Carmel's motion for partial summary judgment and denied KPMG's motion. This appeal ensued, and we accepted this cause as an interlocutory appeal on August 12, 2002.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Relying upon specifically designated evidence, the moving party bears the burden with regard to these two components. *Estate of Pflanz v. Davis,* 678 N.E.2d 1148, 1150 (Ind.Ct.App.1997). If the moving party meets these two requirements, the burden then shifts to the non-movant to set forth specifically desig-

nated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App.1991). This standard of review is not altered by cross-motions for summary judgment. *Kroger Co. v. Estate of Hinders,* 773 N.E.2d 303, 305 (Ind.Ct. App.2002), *trans. denied.*

█ On appeal, this Court is bound by the same standard as the trial court, and we consider only those matters which were designated to the trial court. *Pflanz,* 678 N.E.2d at 1151. We liberally construe all designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. *Id.* The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. *Id.* Moreover, if the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced outside the statutory period, the non-movant has the burden of establishing an issue of fact material to a theory that overcomes the affirmative defense. *Crowe, Chizek, and Co., L.L.P. v. Oil Technology, Inc.,* 771 N.E.2d 1203, 1206–07 (Ind.Ct.App. 2002), *reh'g denied.*

█ A question of statutory interpretation is a matter of law, and we are neither bound by, nor are we required to give deference to, the trial court's interpretation. *Perry–Worth Concerned Citizens v. Board of Com'rs of Boone County,* 723 N.E.2d 457, 459 (Ind.Ct.App.2000), *trans. denied.* When interpreting a statute, we look to the express language of the statute and the rules of statutory construction. *Indiana State Teachers Ass'n. v.*

*Board of School Com'rs of City of Indianapolis,* 693 N.E.2d 972, 974 (Ind.Ct.App. 1998). The Court's objective when construing the meaning of a statute is to ascertain and give effect to the legislative intent and to interpret the statute in such a manner as to prevent absurdity and to advance public convenience. *Id.* In so doing, we must be mindful of the purpose of the statute, as well as the effect of such an interpretation. *Id.* We presume that our legislature intended its language be applied in a logical manner consistent with the underlying goals and policy of the statute. *Citizens Action Coalition of Indiana, Inc. v. Indiana Statewide Ass'n of Rural Elec. Cooperatives, Inc.,* 693 N.E.2d 1324, 1327 (Ind.Ct.App.1998). However, we may not interpret a statute that is clear and unambiguous on its face. *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 215 (Ind.Ct.App.1999), *trans. denied.* Rather, the words of the statute are to be given their plain, ordinary and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* Additionally, the language employed in a statute is deemed to have been used intentionally. *Id.*

Here, KPMG contends that the trial court erred by entering partial summary judgment in favor of Carmel. Specifically, KPMG asserts here, as well as in its affirmative defenses to Carmel's complaint, that Carmel failed to file its claim within the statutory period provided in Ind.Code § 25–2.1–15–2, the accountant statute of limitations statute.

Ind.Code § 25–2.1–15–2 provides:

An action under this chapter must be commenced by the *earlier of the following:*

(1) One (1) year from the date the alleged act, omission, or neglect is discovered or should have been discovered by the exercise of reasonable diligence.

(2) Three (3) years after the service for which the suit is brought has been performed or the date of the initial issuance of the accountant's report on the financial statements or other information.

(Emphasis added).

This statute is clear and unambiguous on its face; therefore, we may not interpret it. *Schafer*, 714 N.E.2d at 215. Rather, we will give the words of the statute their plain, ordinary and usual meaning. *Id.* In the present case, the designated materials show that KPMG performed accounting services for Carmel from 1988 through and including 1996. The evidence also reveals, and both parties agree, that the alleged negligence was discovered by Carmel in 1997. Therefore, under the first subsection of Ind.Code § 25–2.1–15–2, the statute of limitations for Carmel to bring an action against KPMG for negligence in their provision of accounting services to Carmel expired in 1998. Under the second subsection, the statute of limitations terminated in 1999. However, the statute mandates that an action for accountant malpractice must be commenced by the *earlier* of the two dates. Thus, without considering any tolling or other suspension of the statute of limitations that may have occurred, Carmel's action against KPMG would be time-barred unless filed by 1998. Carmel did not file their action in the trial court until January 12, 2001. Thus, Carmel's action against KPMG was not timely filed pursuant to Ind.Code § 25–2.1–15–2. However, as one might have guessed, Carmel argues that several factors suspended or tolled the statute from expiring in 1998. We will address each of these allegations in turn.

First, Carmel asserts that, based upon decisions of other jurisdictions, their claim did not accrue until the Internal Revenue Service (IRS) had made its final determination in April 1999. In other words, Carmel argues that their claim did not accrue until the IRS had finished its audit, and Carmel had a specific monetary figure, according to the IRS, to claim as damages. The cases cited by Carmel involve statutes that refer to the discovery of the "cause of action" and all that that term encompasses.[1] This is in contrast to Ind. Code § 25–2.1–15–2 which refers to the discovery of the "act, omission or neglect" as the trigger for the limitations period to begin to run. As discussed above, Ind. Code § 25–2.1–15–2 governs the accrual of a claim and provides clear direction as to when a claim accrues and the period within which that claim must be brought for accountant malpractice actions in the State of Indiana.

Moreover, we need only look to the recent Indiana case entitled *Crowe, Chizek, and Co., L.L.P. v. Oil Technology, Inc.*, 771 N.E.2d 1203 (Ind.Ct.App.2002), *reh'g denied,* for guidance on the application of our state's accountant malpractice statute. Although Carmel attempts to distinguish this case from the case at bar, it is instructive. Crowe appealed the trial court's denial of its motion for summary judgment with regard to Oil Technology's lawsuit against it for accountant malpractice. Like Carmel, Oil Technology had overpaid its taxes due to the negligent preparation of its tax returns by Crowe. This Court, applying the plain and unambiguous terms of the accountant malpractice statute and without any reference to the amount of damages, determined that Oil Technology had not filed its claim within the time limit provided by the statute because it had

---

1. *See* FLA. STAT. ch. 95.11(4)(a); CAL. CIVIL PROCEDURE CODE § 339, subdivision 1; and ARIZ. REV. STAT. § 12–542.

failed to file the lawsuit within three years after Crowe last performed services for Oil Technology. Thus, Carmel's suggestion to look beyond our borders for interpretation of our state's statute, as well as Carmel's reliance on cases from foreign jurisdictions with different statutes, is misplaced.

Next, Carmel argues that its complaint was timely filed based upon the "Standstill Agreement" it signed with KPMG. The Standstill Agreement was signed by the parties on October 13, 1999. It states, in pertinent part, as follows:

1. If CARMEL makes any claim against KPMG relating in any way to the Services provided by KPMG or the IRS audit, such claim shall be deemed to have been made by May 20, 1999.

2. This Agreement shall not revive any claims which, prior to May 20, 1999, may have been barred by any statute of limitations, laches or any similar doctrine.

\* \* \* \* \* \* \* \* \* \*

4. This Agreement shall expire one year from the later date when it is executed by both parties unless extended in writing signed by all parties hereto. If expired, this Agreement shall be void *ab initio*.

5. By entering into this Agreement, none of the parties hereto makes any admissions or representations with regard to the date or dates any applicable statute of limitations may expire.

Appellant's App. at 47. Carmel claims that, based upon the Standstill Agreement, their complaint filed in federal court was timely filed. Carmel reasons that its federal complaint, which was filed in September 2000, was timely because it was filed

during the one-year period in which the Standstill Agreement was in effect, that is from October 1999 through October 2000. Thus, by the terms of the Standstill Agreement, specifically paragraph 1, Carmel's claim filed in federal court would be deemed to have been made by May 20, 1999. Carmel bases its argument on the incorrect premise that the statute of limitations did not begin to run until April 1999 when the IRS made its final determination. Thus, as the argument goes, Carmel filed its complaint in federal court less than one month after the statute of limitations had begun to run, as well as during the period that the Standstill Agreement was in effect.

This is incorrect. Carmel incorrectly alleges that the statute of limitations did not begin to run until April 1999 with the completion of the audit by the IRS. However, as we discussed previously, the statute of limitations for any action by Carmel against KPMG expired in 1998. Therefore, at the time the Standstill Agreement was signed in 1999, the statute of limitations had already expired on Carmel's claim. The parties acknowledge that this might be the case by the language they included in paragraph 2 of the Standstill Agreement. Therefore, because the statute of limitations expired in 1998, prior to the execution of the Standstill Agreement, the Standstill Agreement does not save Carmel's federal complaint to make it timely. Thus, the complaint filed by Carmel in federal court in September 2000 was not timely because the statute of limitations had expired in this cause of action. Moreover, neither the Journey's Account Statute [2], nor the doctrine of equitable toll-

---

**2.** The Journey's Account Statute is codified at Ind.Code § 34–11–8–1 and provides:

(a) This section applies if a plaintiff commences an action and the plaintiff fails in the action from any cause except:

(1) negligence in the prosecution of the action;

(2) the action abates or is defeated by the death of a party; or

ing[3] operate to salvage Carmel's state court complaint based on the earlier filing of its federal complaint. Both require the original filing to be timely, and, as determined above, Carmel's initial filing in federal court was not timely.

■■■■ Finally, Carmel urges us to find that there is a genuine issue of material fact regarding Carmel's claim that KPMG should be equitably estopped from asserting the statute of limitations defense. However, KPMG asserts that Carmel did not raise this issue in the lower court, and, upon review of the materials on appeal, we find no evidence designated to the trial court that refers to equitable estoppel. We will not affirm a decision based on a theory argued on appeal when that theory was not properly before the trial court. *Bahre v. Metropolitan School Dist. Of Washington Tp., Marion County,* 400 N.E.2d 197, 199 (Ind.Ct.App.1980). Thus, the issue of equitable estoppel is waived for failure to raise it first to the trial court, and we therefore decline to address whether there is a genuine issue of material fact regarding Carmel's claim that KPMG should be equitably estopped from asserting the statute of limitations defense.

■■■ It is axiomatic that the claimant in a legal action bears the burden of filing suit against the proper party within the statute of limitations. Carmel failed to file its action against KPMG in a timely manner; therefore, it was error for the trial

court to grant Carmel's motion for partial summary judgment and to deny KPMG's motion for summary judgment.

Reversed and remanded with instructions to enter summary judgment in favor of KPMG.

ROBB, J., and FRIEDLANDER, J., concur.

---

(3) a judgment is arrested or reversed on appeal.

(b) If subsection (a) applies, a new action may be brought not later than the later of:

  (1) three (3) years after the date of the determination under subsection (a); or

  (2) the last date an action could have been commenced under the statute of limitations governing the original action;

and be considered a continuation of the original action commenced by the plaintiff.

**3.** The doctrine of equitable tolling has been applied where a plaintiff, in good faith, has brought an action in federal court **within the statute of limitations,** but it fails for lack of diversity jurisdiction. The statute of limitations is then tolled with the filing of the federal suit for purposes of determining whether a subsequent state action involving the same parties and the same claims is brought within the statute of limitations. *See Torres v. Parkview Foods,* 468 N.E.2d 580, 583 (Ind.Ct.App. 1984) (emphasis added).