Corbin SMYTH, Appellant–Plaintiff,

v.

Stephen CARTER, Attorney General of the State of Indiana; Indiana Department of the Attorney General; Tim Berry, Treasurer of the State of Indiana; and, the Indiana Department of the Treasury, Appellees–Defendants.

No. 49A04–0504–CV–235.

Court of Appeals of Indiana.

April 12, 2006.

John R. Wylie, Matthew T. Heffner, Chicago, IL, Rodney Taylor, Michael A. Beason, Indianapolis, for Appellant.

Stephen R. Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Jeffrey R. Cox, Deputy Attorney General, Indianapolis, for Appellees.

## OPINION

HOFFMAN, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Corbin Smyth ("Smyth") appeals the trial court's dismissal of his complaint against Defendants–Appellees Stephen Carter, Attorney General of the State of Indiana; Indiana Department of the Attorney General; Tim Berry, Treasurer of the State of Indiana; and the Indiana Department of the Treasury (collectively, "the State").

We affirm.

### STATEMENT OF THE ISSUES

The following issues are dispositive:

I.  Whether the trial court properly dismissed Smyth's claim that the State's retention of interest pursuant to the Indiana Unclaimed Property Act constitutes an unconstitutional taking of private property without just compensation in violation of Article I, § 21 of the Indiana Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

II. Whether the trial court properly dismissed Smyth's claim that

Indiana Unclaimed Property Act requires the State to pay him the value of his stock on the date the stock was delivered to the Attorney General.

## FACTS AND PROCEDURAL HISTORY

The facts, as alleged in Smyth's complaint, are as follows. On December 11, 2001, pursuant to the Indiana Unclaimed Property Act ("the Act"), the State took custody of Smyth's Topps, Inc. stock and certain dividends that had been deemed abandoned. On the date of the transfer, the Topps stock had a value of $485.20, and on January 30, 2002, the State sold the stock for $396.79.

In December of 2003, Smyth made a claim for the Topps stock and any accruements. Upon approval of the claim, the State sent Smyth the amount of the sale proceeds, $396.79, plus the dividends that had been earned but not paid before the State took custody, for a total of $406.34. The State retained the interest that had accrued after the liquidation of the Topps stock.

On March 22, 2004, Smyth filed a complaint in which he alleged that the State took his private property without compensation in violation of Art. I, § 21 of the Indiana Constitution and the Fifth and Fourteenth Amendments to the United States Constitution when, following the dictates of the Act, it did not remit the interest accrued after the sale of the Topps stock. Smyth also alleged that the State erred when it remitted to him the proceeds from the sale of the Topps stock rather than the amount representing the value of the stock on the date it was delivered into the State's custody. Smyth filed his action on his own behalf and on behalf of a class of all persons or entities whose property had been taken without just compensation.

Smyth sought a declaration that Ind. Code § 32–34–1–30(b) is unconstitutional, a subsection of the Act which states that an owner is not entitled to receive dividends, interest, or other increments accruing after delivery of property to the attorney general. Smyth also sought injunctive relief to prevent further enforcement of the statute insofar as it denies compensation for a taking. In addition, Smyth sought an accounting to determine the persons and entities to whom the State failed to remit earnings and/or the value of their securities on the delivery date.

The trial court dismissed Smyth's complaint in its entirety, and Smyth now appeals.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

Because this is an appeal from the trial court's grant of the State's motion to dismiss for failure to state a claim, this Court's review is *de novo*. *See Randolph v. Methodist Hospitals, Inc.,* 793 N.E.2d 231, 234 (Ind.Ct.App.2003), *trans. denied.* This Court "need not defer at all to the [trial court's] decision because deciding a motion to dismiss based on failure to state a claim involves a pure question of law." *Id.* Thus, the trial court's dismissal should be affirmed only if this Court finds the complaint states a set of facts that could never support the relief requested. *Id.* This Court "will not assess the sufficiency of facts supporting the complaint, but determines if the complaint states any allegation upon which the trial court could grant relief." *Meury v. Eagle–Union Community School Corp.,* 714 N.E.2d 233, 238 (Ind.Ct.App.1999), *trans. denied* (quoting *McDonald v. Smart Professional Photo,* 664 N.E.2d 761 (Ind.Ct.App.1996)).

## I.

The right of the Sovereign to take possession of certain types of property is well established. It has long been recognized that when an owner leaves behind personal property with the specific intent to terminate ownership, or when an owner ceases all efforts to seek and reclaim lost property, the law considers that property abandoned. K. Reed Mayo, *Virginia's Acquisition of Unclaimed and Abandoned Property*, 27 Wm. & Mary L.Rev. 409, 411 (1986). Under the English common law doctrine known as *bona vacantia*, rights to certain types of personal property traditionally passed to the sovereign. *Id.*

The largest category of personalty considered *bona vacantia* was goods left when a person died intestate without heirs. *Id.* The doctrine also applied to personal property held in a failed trust, personal property held in the name of a dissolved corporation, and some forms of abandoned personal property such as wrecks, treasure troves, waifs, and estrays. *Id.* at 411–12. Under the doctrine, all of these types of property escheated to the Crown. *Id.* at 412. Many American states adopted the common law of England, and in doing so, they implicitly adopted the *bona vacantia* doctrine. *Id.* Eventually, the historical doctrines of *bona vacantia* and escheat (reversion of real property to the State) were combined under the heading of "escheat." *Delaware v. New York*, 507 U.S. 490, 497, 113 S.Ct. 1550, 1555, 123 L.Ed.2d 211 (1993). For purposes of this opinion, "escheat" refers to the process by which a State takes title to both real and personal property.

■ Unclaimed property laws, such as Indiana's Act, do not operate as a true escheat because the States take possession of, but not title to, property received from the holder. The passing of possession of property from the holder to the State un-

der unclaimed property acts is generally referred to as a "custodial escheat." *See e.g., Fong v. Westly*, 117 Cal.App.4th 841, 12 Cal.Rptr.3d 76, 77 (2004), *rev. denied.*

■ Unclaimed property acts are designed to serve the dual purposes of reuniting owners with the value of unclaimed property and giving the state, rather than the holder, the benefit of the use of the unclaimed property pending reclamation by the owner. *See e.g., Texas Municipal League Intergovernmental Risk Pool v. Texas Workers' Compensation Commission*, 74 S.W.3d 377, 382 (Tex.2002). Such acts serve a public purpose by raising revenue to benefit all citizens of the state. *See Commonwealth v. Vega*, 174 F.3d 870, 872 (7th Cir.1999), *cert. denied*, 528 U.S. 873, 120 S.Ct. 176, 145 L.Ed.2d 149 (1999); *Louisiana Health Service and Indemnity Co. v. Tarver*, 635 So.2d 1090, 1092 (La. 1994).

Under Indiana's Act, the State takes custody of unclaimed property if it is presumed abandoned. Ind.Code § 32–34–1–21. Under the Act, personal property is presumed abandoned if the owner has not shown any interest in the property for a statutorily prescribed period of time. Ind. Code § 32–34–1–20(c). Once the property is presumed abandoned by the operation of the Act, an entity holding the property must report the property to the Attorney General and provide certain information. Ind.Code § 32–34–1–26. Before filing its report, the holder must send written notice to the owner of the property of such action if the holder possesses the owner's correct address and if the value of the property is at least fifty dollars. Ind.Code § 32–34–1–26(e).

After receiving the property from the holder, the Attorney General must publish notice not later than November 30th of the year immediately following the year in

which the unclaimed property was remitted. Ind.Code § 32–34–1–28(a). The Attorney General must publish the notice at least once each week for two successive weeks in a newspaper in the county of the owner's last known address, or, if there is no last known address or the address is out-of-state, the publication may be made in the county where the holder has his principal place of business or any other county that the Attorney General reasonably selects. Ind.Code § 32–34–1–28(b) and (c). The notice must provide, among other things, information about the unclaimed property, and it must state that return to owner will occur upon request. Ind.Code § 32–34–1–28(d)(4).

The Act states that an owner is entitled to receive dividends, interest, or other increments realized or accruing on the unclaimed property at or before delivery to the Attorney General. Ind.Code § 32–34–1–30(a). The Act further provides that "the owner is not entitled to receive dividends, interest, or other increments accruing after delivery of the property to the attorney general . . . ." Ind.Code § 32–34–1–30(b).

Smyth contends that the State's retention of the interest accrued after the sale of his stock violates both the federal and state constitutions.[1] Smyth's contention is premised on his belief that the State's possession of property under the Act is "purely" custodial. Appellant's Brief at 4. His contention is further premised on the common law maxim that "interest follows principal."

While it is true that the Act is not a true escheat act, it is also true that it is not purely custodial in nature. The chief incidents of ownership of property are the rights of possession, of use and enjoyment, and of disposition. *Rhoades v. State*, 224 Ind. 569, 70 N.E.2d 27, 29 (1946); *Indiana Waste Systems of Indiana, Inc. v. Indiana Department of State Revenue*, 633 N.E.2d 359, 367 (Ind.Tax 1994). Under the Act, however, an owner's failure to exercise his or her right of possession results in a presumption that the property has been abandoned. Once the property has been presumed abandoned and has been remitted to the State by the holder, the State then may, contrary to the owner's right of disposition, sell the property. A state's exercise of this incident may have significant consequences. *See Fong*, 12 Cal. Rptr.3d at 79–80 (sale of stock for $7,000 per share by the State that was allegedly worth approximately $70,000 per share). The forfeiture of interest and dividends pursuant to the Act also results from the owner's failure to assert his or her property rights and is a further indication that the Act is not purely custodial. Thus, Smyth's reliance on the custodial nature of the Act is misplaced.

■ Indiana has recognized the common law maxim that "interest follows principal." Indeed, our supreme court held that this maxim applied to interest earned on lawyers' trust accounts containing funds of the lawyers' clients. *Matter of Indiana State Bar Association's Petition to Authorize a Program Governing Interest on Lawyers' Trust Accounts*, 550 N.E.2d 311, 312 (Ind.1990). However, as explained below, the maxim does not apply where an owner's actions cause the loss of rights of ownership.

---

1. The Fifth Amendment to the United States Constitution reads "nor shall private property be taken for public use, without just compensation," while Article I, Section 21 of the Indiana Constitution states that "no person's property shall be taken by law, without just compensation." Our supreme court has held that analysis is the same under both constitutions. *B & M Coal Corp. v. United Mine Workers of America*, 501 N.E.2d 401 (Ind. 1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987).

■ In *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), the Supreme Court evaluated the propriety of Indiana's Dormant Mineral Interests Act, which provided that a severed mineral interest not used for a period of twenty years automatically lapses and reverts to the current surface owner of the property. In determining that the owner was not entitled to compensation under the Fourteenth Amendment, the Court held that it had "never required the State to compensate the owner for the consequences of his own neglect." 102 S.Ct. at 792. The Court further stated that "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.*

The Act conditions the retention of full property rights upon the owner's exercise of such rights. Failure to exercise those rights results in a presumption of abandonment and a custodial escheat that deprives the owner of some of the incidents of ownership. Because it is the owner's failure to act, and not the State's exercise of its sovereign power, that causes the deprivation, there is no "taking" that requires compensation.

### II.

Smyth contends that the State ignored the unambiguous language of Ind.Code § 32–34–1–31(c) in giving him the value of his Topps stock on the date it was sold instead of the greater value of the stock on the date it was delivered to the Attorney General. Ind.Code § 32–34–1–31(c) states in relevant part:

Securities shall be sold as soon as reasonably possible following receipt. If a valid claim is made for any securities in the possession of the attorney general, the attorney general may:

(1) transfer the securities to the claimant; or

(2) pay the claimant the value of the securities as of the date the securities were delivered to the attorney general.

■ When interpreting a statute, we consider the express language of the statute and, if necessary, the rules of statutory construction. *KPMG, Peat Marwick, LLP v. Carmel Financial Corp.*, 784 N.E.2d 1057, 1060 (Ind.App.2003). Our objective when construing the meaning of a statute is to ascertain and give effect to the legislative intent. *Id.* In so doing, we must be mindful of the purpose of the statute, as well as the effect of such an interpretation. *Id.* However, we may not construe a statute that is clear and unambiguous on its face. *Id.* Rather, the words of the statute are to be given their plain, ordinary and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* A statute is ambiguous only if it is susceptible to more than one reasonable and intelligible interpretation. *Medical Assurance of Indiana v. McCarty*, 808 N.E.2d 737, 741 (Ind.Ct.App.2004).

■ The only way to arrive at Smyth's interpretation of Ind.Code § 32–34–1–31(c) is to ignore the statute's plain language. The statute clearly refers to the payment of a valid claim that is made for any securities *in the possession of the attorney general.* Smyth made his claim for the Topps stock some two years after it was sold. Thus, at the time the claim was made, the securities were not in the possession of the Attorney General, and the statute does apply. Smyth's claim is made pursuant to Ind.Code § 32–34–1–36(c), which provides that the State shall pay "the net proceeds of the sale of the property *if the property has been sold by the attorney general,* together with any additional amount to which the claimant may

be entitled under section 30 of this chapter." (Emphasis added).

In summary, the retention of interest by the State pursuant to Ind.Code 32–34–1–29 does not constitute an unconstitutional taking. Furthermore, the payment of the net proceeds of the sale of the Topps stock was proper under the Act. The trial court did not err in dismissing Smyth's complaint.

Affirmed.

SHARPNACK, J., and
FRIEDLANDER, J., concur.