OPINION
{¶ 1} Defendant-appellant, the Ohio Department of Commerce ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas denying its motion *Page 2 
for summary judgment and granting summary judgment in favor of plaintiff-appellee Wilton S. Sogg ("appellee").
 {¶ 2} At issue in this litigation is Ohio's Unclaimed Funds Act codified in R.C. 169.01 et seq. On August 3, 2004, appellee filed a class-action complaint in the Franklin County Court of Common Pleas seeking a declaration that appellant's retention of interest earned on unclaimed funds pursuant to R.C. 169.08(D) violates the Takings Clause of both the United States and Ohio Constitutions. After appellee amended the complaint, appellant sought dismissal. The trial court denied appellant's motion to dismiss except as to appellee's claim for mandamus. The trial court certified the class, and in a separate decision, limited class membership to a four-year period. After the submission of stipulated facts, both parties moved for judgment as a matter of law. The trial court found that the provision of Ohio's Unclaimed Funds Act authorizing appellant to retain the interest earned on unclaimed funds was unconstitutional. The trial court also granted appellee a permanent injunction, but stayed its decision and allowed the parties to immediately appeal.
 {¶ 3} On appeal, appellant raises the following three assignments of error:
 FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO SOGG AND THE CLASS, AND IN DENYING SUMMARY JUDGMENT TO THE STATE, ON THE ISSUE OF LIABILITY BECAUSE THE STATE MAY LAWFULLY RETAIN THE INTEREST EARNED ON UNCLAIMED FUNDS. *Page 3 
 SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED BY FAILING TO DISMISS SOGG'S AND THE CLASS' DEMANDS FOR EQUITABLE AND EXTRAORDINARY RELIEF, BECAUSE THE EXCLUSIVE REMEDY FOR AN UNCONSTITUTIONAL TAKING IS COMPENSATION.
 THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN HOLDING THE STATUTE OF LIMITATIONS ON THE CLASS IS FOUR YEARS, BECAUSE THE APPLICABLE LIMITATION PERIOD IS TWO YEARS UNDER R.C. 2305.10.
 {¶ 4} Appellee raises the following assignment of error in his cross-appeal:
 THERE IS NO STATUTE OF LIMITATIONS APPLICABLE TO PLAINTIFF'S AND THE CLASS' CLAIMS FOR RESTITUTION OF THE EARNINGS ON THEIR PRIVATE PROPERTY. ALTERNATIVELY, THE TRIAL COURT CORRECTLY HELD THAT THE LIMITATIONS PERIOD SHOULD BE FOUR YEARS AS PROVIDED IN R.C. 2305.09.
 {¶ 5} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181. *Page 4 
 {¶ 6} For purposes of their respective motions for summary judgment, appellee and appellant filed with the trial court a stipulated statement of material facts. The following factual recitation is taken from that stipulation. Ohio's Unclaimed Funds Act ("UFA") was enacted in 1967. (Stipulation.) The UFA is currently supervised and administered by the Ohio Department of Commerce's Division of Unclaimed Funds ("Division"). Id. The purpose of the UFA is threefold: (1) to protect the property rights of the owner and to reunite the owner with the funds; (2) to provide a centralized location of contact for potential owners of unclaimed funds; and (3) to provide the holders relief from liability. Id. Pursuant to R.C. 169.01, money, rights to money, or intangible property becomes unclaimed when the owner has not generated activity for a statutorily prescribed period, and the holder of the property cannot locate the owner. Id. In most cases, the holder of the property is a bank, investment broker, insurance company, or utility, and generally the statutorily prescribed time period is five years. Id. However, the time frame for property to be considered unclaimed may vary depending on the type of fund at issue. Id. R.C. 169.03 requires a holder of unclaimed funds to report unclaimed funds to the Division. Id. Pursuant to R.C. 169.05, all funds that meet the statutory definition of unclaimed are placed under the control of the Division. Id. Securities and other intangible, non-monetary property that are delivered into the Division's custody and control are to be "within a reasonable time converted to cash," and the proceeds of the sale are to be deposited with other unclaimed funds. R.C. 169.05(A). *Page 5 
 {¶ 7} If a holder reports that it possesses unclaimed funds greater than $50, the holder may (a) remit the entire amount to the Division, or (b) at the Division's discretion, remit 10 percent and retain 90 percent. (Stipulation.) If the holder retains 90 percent, R.C. 169.05
requires the holder to deposit the retained amount in an income-bearing FDIC insured or U.S. Treasury Account as approved by the Division. Id. All earnings on those invested funds are to be delivered to the Division. Id. If the holder reports less than $50, the entire amount must be remitted to the Division. Id. In any event, unclaimed monies are held in perpetuity for the benefit of the owners of the unclaimed property, and never become the property of the state. Id. The Division deposits all principal amounts delivered as unclaimed property into a depository account at a financial institution. Id. From there, the funds are placed in income-bearing accounts which invest primarily in low-risk short term U.S. Treasury instruments, and are used for logistical cash management purposes to fund the Division's needs. Id. Additionally, some unclaimed property is transferred, at the discretion of the state legislature, to other state programs, primarily the Ohio Housing Finance Authority ("OHFA"). Id. One of the activities in which OHFA engages is to lend its funds at interest to OHFA's Housing Development Fund ("HDF"), to support housing development in the state. Id. When the loans are repaid, OHFA remits the principal amounts back to the Division, but does not remit the interest paid on the loans. Id. In addition to the OHFA, the Division has also transferred unclaimed property to other state agencies and programs, including the Savings and Loan Assurance Corporation, the Ohio Job Development Fund, and the State's General *Page 6 
Fund. Id. Regardless of where funds are transferred, all unclaimed funds are subject to call by the Division when necessary to pay claims by owners. Id.
 {¶ 8} When initially enacted, the UFA provided that an owner of funds whose claim was allowed by the Division would receive interest "computed at the rate earned by such funds during the period the director of commerce held the funds or at the rate agreed to by the holder and the owner, whichever is greater." Id. The UFA was later amended so a property owner was given 6 percent interest along with the principal. Id. Effective July 26, 1991, R.C. 169.08(D) was amended to provide that "[i]nterest is not payable to claimants of unclaimed funds held by the state." Id. Also effective July 26, 1991, was the amendment directing the Division to retain "as a fee for administering the funds, five percent of the total amount of unclaimed funds payable to the claimant[.]" R.C. 169.08. The UFA also provides in R.C. 169.08 that any person claiming a property interest in unclaimed funds delivered or reported to the state under Chapter 169 of the Revised Code may file a claim, and there is no statute of limitations to bar the allowance of a claim. Id.
 {¶ 9} The specific factual circumstances giving rise to this litigation are as follows. Appellee is the executor of his mother's estate. Appellee's mother passed away leaving unclaimed funds consisting of the following: $40.52, reported to appellee in 1989 by Blue Cross Blue Shield, and $292.86 in dividends reported in 1998 by the Bank of New York. In 2004, appellee made a claim for those funds, and was issued a check for $320.72, representing the principal amounts, interest earned on the $40.52 until July 26, 1991, *Page 7 
minus the five percent fee for administrative costs. Asserting that the UFA is unconstitutional, appellee filed this class action suit in 2004. As previously indicated, the trial court agreed with appellee, and severed the first sentence of R.C. 169.08(D), which provided that the state shall not pay interest.
 {¶ 10} The underlying rationale for the trial court's decision was that since the funds at issue "always remain the property of the private owner," under the "interest follows principal" rule, which the trial court held was not subject to legislative abrogation, the interest earned on those funds is also private property. Sogg v. White,139 Ohio Misc.2d 58, 2006-Ohio-4223, at ¶ 16-26. Finding a pecuniary loss resulting from the interest retention, the trial court held the nonpayment of interest on unclaimed funds was in violation of theFifth Amendment of the United States Constitution, and that appellee was entitled to relief.
 {¶ 11} On appeal, appellant first directs us to the basic premise that legislation is presumed constitutional unless it is shown beyond a reasonable doubt to violate a constitutional provision. State ex relDickman v. Defenbacher (1955), 164 Ohio St. 143, paragraph one of the syllabus. Appellant next contends that states have the power to permit unused or abandoned interests in property to revert to another after the passage of time. Pursuant to this power, it is appellant's position that it may constitutionally retain the interest earned on the unclaimed funds by taking custody of unclaimed property without taking title to the unclaimed property. According to appellant, it is not required to take an "all-or-nothing" approach to dispose of unused or abandoned property. In support of its *Page 8 
position, appellant relies on Smyth v. Carter (Ind.App. 2006),845 N.E.2d 219, transfer denied, 2006 Ind. LEXIS 755. Appellant further argues that because the state is permitted to abrogate common law principles through legislation, it did so in this instance and abrogated the "interest follows principal" doctrine when it amended the UFA in 1991. Additionally, appellant contends that appellee has not suffered a pecuniary loss, and therefore has no right to compensation. Lastly, appellant contends the decisions in Webb's Fabulous Pharmacies, Inc. v.Beckwith (1980), 449 U.S. 155, 101 S.Ct. 446, and Canel v. Topinka
(2004), 212 Ill.2d 311, upon which the trial court relied, are inapposite to the matter at hand, and therefore, the trial court's reliance on these cases was misplaced.
 {¶ 12} To the contrary, appellee contends the trial court correctly held that R.C. 169.08(D) is unconstitutional, because unclaimed property is not abandoned property, but rather always remains private property, and pursuant to the "interest follows principal" rule, the interest earned on private property also constitutes private property. Arguing that the state is not permitted to nullify the "interest follows principal" doctrine, appellee takes the position that the state's retention of interest earned on unclaimed funds contravenes theFifth Amendment protection of private property interests.
 {¶ 13} "[W]e are mindful that all legislation is presumed constitutional and will not be struck down absent proof of its invalidity beyond a reasonable doubt." Dayton Supply Tool Co. v.Montgomery Cty. Bd. of Revision, 111 Ohio St.3d 367, 2006-Ohio-5852, ¶ 20, citing State v. Hayden, 96 Ohio St.3d 211, 2002-Ohio-4169, ¶ 7, citing Defenbacher, paragraph one of the syllabus. With that premise in mind, we begin our analysis with a *Page 9 
discussion of Webb's and its relevance here. In Webb's, Eckerd's of College Park, Inc. ("Eckerd") entered into an agreement to purchase the assets of Webb's. Because Webb's debts were greater than the purchase price, to protect itself as permitted by Florida law, Eckerd filed a complaint of interpleader in a Florida Circuit Court. Pursuant to Florida law, the Circuit Court ordered the amount tendered to be paid to the court's clerk. The court's clerk was required to deposit the money in an interest bearing account. All accrued interest was deemed to be income of the clerk's office. The Supreme Court of Florida ruled that the statute was constitutional and did not involve an unconstitutional taking because (1) the deposited funds were considered public money from the date of deposit until the funds left the account; (2) the statute took only what it created; and (3) the interest earned on the deposited funds was not private property.
 {¶ 14} In reversing the Supreme Court of Florida, the United States Supreme Court stated:
 * * * [a] State, by ipse dixit, may not transform private property into public property without compensation, even for the limited duration of the deposit in court. This is the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power.
Id. at 164.
 {¶ 15} The court went on to state:
 We hold that under the narrow circumstances of this case-where there is a separate and distinct state statute authorizing a clerk's fee "for services rendered" based upon the amount of principal deposited; where the deposited fund itself concededly is private; and where the deposit in the court's *Page 10 
registry is required by state statute in order for the depositor to avail itself of statutory protection from claims of creditors and others — Seminole County's taking unto itself, under § 28.33 and 1973 Fla. Laws, ch. 73-282, the interest earned on the interpleader fund while it was in the registry of the court was a taking violative of the Fifth and Fourteenth Amendments. We express no view as to the constitutionality of a statute that prescribes a county's retention of interest earned, where the interest would be the only return to the county for services it renders.
Id. at 164-165.
 {¶ 16} Because the state admittedly does not take title to the unclaimed funds, the trial court found the funds to be analogous to the private property at issue in Webb's. While we appreciate Webb's holding, we find the trial court's reliance on it to be misplaced. Our reading ofWebb's reveals that not only did Webb's explicitly confine its ruling to the facts before it, but also, it in fact did not concern the type of property at issue before this court. As will be further explained, in our view, analysis premised on Webb's glosses over two key distinguishing facts: (1) the property at issue here is unclaimed; and (2) the statute at issue in Webb's required the depositor to deposit funds in a court registry in order for the depositor to avail itself of certain statutory protections.
 {¶ 17} The remainder of the trial court's analysis with respect to the constitutionality of the state's retention of the interest earned on unclaimed funds while in the custody of the state stems fromPhillips v. Washington Legal Foundation (1998), 524 U.S. 156,118 S.Ct. 1925, and Brown v. Legal Foundation of Washington (2003), 538 U.S. 216,123 S.Ct. 1406, which concerned interest on lawyers trust account ("IOLTA") systems. Together, Brown and Phillips hold that interest earned on funds in IOLTA *Page 11 
accounts is private property; however, there is no governmental taking by the state's retention of said interest because the owner suffers no pecuniary loss. The trial court, relying on Phillips and Brown, concluded there is not only a governmental taking by the state's retention of interest earned on unclaimed funds, but there is also a pecuniary loss because the amount of unclaimed funds is significantly greater than the "trifling" amount involved in most IOLTA accounts. In our view, reliance on Brown and Phillips suffers from the same flaw that exists with reliance on Webb's, and that this matter is readily distinguishable from the same. In Phillips and Brown, the court's discussion centered around an individual owner's actual loss, or the interference with an owner's investment-backed expectations, a notion that is present with respect to property that unquestionably belongs to the owner. At this time, we are presented with a scenario caused not by government action, but by owner neglect. As will be explored further, though the UFA provides that title to unclaimed funds remains with the owner, there is unquestionably a property lapse that occurs because of the owner's failure to act with respect to said property within a statutorily prescribed period of time. Therefore, under our analysis, because there is no governmental taking that requires compensation, this matter does not fall within the confines of Brown or Phillips, and it matters not whether there is a pecuniary loss to the owner.
 {¶ 18} In Texaco, Inc. v. Short (1982), 454 U.S. 516, 102 S.Ct. 781, decided two years after Webb's, and making no mention of the same, the United States Supreme Court had occasion to review an Indiana statute that provided that a severed mineral *Page 12 
interest that is not used for a period of 20 years automatically lapsed and reverted to the current surface owner of the property, unless the mineral owner filed a statement of claim in the county recorder's office. The court stated, "[f]rom an early time, this Court has recognized that States have the power to permit unused or abandoned
interests in property to revert to another after the passage of time." (Emphasis added.) Id. at 526. In addressing the plaintiff's claims, the Court stated:
 Two of appellants' arguments may be answered quickly. Appellants contend that the Mineral Lapse Act takes private property without just compensation in violation of the Fourteenth Amendment; they also argue that the statute constitutes an impermissible impairment of contracts in violation of the Contract Clause. The authorities already discussed mandate rejection of each of these arguments.
 In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. We have concluded that the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; it follows that, after abandonment, the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property — and not the action of the State — that causes the lapse of the property right; there is no "taking" that requires compensation. The requirement that an owner of a property interest that has not been used for 20 years must come forward and file a current statement of claim is not itself a "taking."
Id. at 530. *Page 13 
 {¶ 19} Thus, there is an important distinction between property like that at issue in Webb's and property like that in Texaco that is unused for a statutorily prescribed period of time — a difference that is critical in our analysis.
 {¶ 20} Most, if not all, of the 50 states have enacted legislation to manage unclaimed property. To date, only a few of these statutes have been challenged, and even fewer have presented an issue similar to the one before us, i.e., the constitutionality of the sovereign's retention of interest earned on unclaimed funds while the funds are in the sovereign's custody. One such statute is found in Smolow v. Hafer
(2005), 867 A.2d 767. In that case, Smolow sought the payment of interest on property recovered pursuant to Pennsylvania's Disposition of Unclaimed and Abandoned Property Act ("Unclaimed Property Law"), and declaratory and injunctive relief on the grounds that the Unclaimed Property Law violates the Just Compensation and Due Process Clauses of the United States Constitution.
 {¶ 21} Pursuant to the Unclaimed Property Law, the state took possession of 300 shares of Smolow's stock in 2002. In early 2003, the shares were sold and the state earned interest on the proceeds. Thereafter, Smolow sought return of his property. The state returned the amount received from the sale of the stock and did not include interest. Smolow then filed a class action complaint seeking, among other things, a determination that Pennsylvania's Unclaimed Property Law was unconstitutional.
 {¶ 22} Under the Unclaimed Property Law, "property that is presumed abandoned is subject to the custody and control of the Commonwealth." Id. at 768, fn. 2. Property is *Page 14 
presumed abandoned if it is "unclaimed by the apparent owner for a specified period of time." Id. Pennsylvania's Unclaimed Property Law also provided that the state would be responsible to an owner "only for the amount actually received" by it upon the sale of any property. Id.Smolow argued that "to the extent the Unclaimed Property Law does not require the payment of interest, the statute is unconstitutional since it does not provide just compensation for the taking and use of private property for public purposes." Id. at 769. The court in Smolow held that the Commonwealth was exercising its right to take "custody and control" of abandoned property, as opposed to taking absolute title. Relying onTexaco, the court stated, "it is Smolow's abandonment of his property, not the action of the Treasurer, which caused his pecuniary loss. There was no taking that requires compensation." Id. at 775. The court held, "* * * where an owner's interest in property is transferred to another pursuant to the Unclaimed Property Law, and due to the original owner's abandonment, the delivery of the property to the Treasurer does not constitute a taking." Id. Because the Unclaimed Property Law did not provide for the payment of interest, the court found no violation of the Unclaimed Property Law.
 {¶ 23} Even more similar to the matter before us is Smyth, supra, which concerned Indiana's Unclaimed Property Act ("IUPA"). Like Ohio's, the IUPA was designed to serve the dual purposes of reuniting owners with the value of unclaimed property and giving the state, rather than the holder, the benefit of the use of the unclaimed property pending reclamation by the owner. Id. at 222, citing Fong v. Westly (2004), 117Cal.App.4th 841, review denied 2004 Cal. LEXIS 5805. In Smyth, pursuant to the IUPA, the state took *Page 15 
custody of Smyth's stock and dividends in 2001. The state sold the stock in 2002. In 2003, Smyth made a claim for the stock and any accruements. The state paid Smyth the amount of the sale proceeds and dividends earned before the state took custody, and the state retained the interest that had accrued after the liquidation of the stock. In early 2004, Smyth filed suit seeking a declaration that the IUPA was unconstitutional and that the state took his private property without just compensation. Under the IUPA, "the State takes custody of unclaimed property if it is presumed abandoned." (Emphasis added.) Id. at 222. Property is presumed abandoned under the IUPA "if the owner has not shown any interest in the property for a statutorily prescribed period of time." Id. Like Sogg, Smyth's contention of the IUPA's unconstitutionality was premised on the belief that the state's possession is "purely" custodial because the IUPA provides that title remains with the owner, and the common law maxim "interest follows principal." Id. at 223.
 {¶ 24} The court in Smyth noted that the forfeiture of interest and dividends pursuant to the IUPA resulted from the owner's failure to assert his or her property rights. Despite acknowledging the "interest follows principal" doctrine, the court, relying on Texaco, explained that the maxim does not apply where an owner's actions, and not that of the state, cause the loss of rights of ownership.
 {¶ 25} Recently, a Louisiana appellate court issued a decision concerning Louisiana's Unclaimed Property Law ("LUPL"), in Hooks v.Kennedy (May 4, 2007), La.App. 1 Cir. No. 2006 CA 0541. In this class action suit, the plaintiffs challenged the *Page 16 
constitutionality of the LUPL. Though paying interest to reclaiming property owners of certain types of property,[1] the court described Louisiana's statutory scheme as follows:
 Louisiana chose a custodial scheme for handling certain types of abandoned property, rather than one in which the title to the abandoned property reverts to the sovereign. Under Louisiana law, after a specified passage of time, holders of property abandoned by missing owners must report the possession of the abandoned property and relinquish custody to the state. Upon transfer from the holder, the state "assumes custody and responsibility for the safekeeping of the property." As notice to possible owners, the state is required to publish lists of the unclaimed property. The state then holds the property, or cash equivalent, in perpetual custody for the absent owner. "Pending a claim by a missing owner, the [s]tate receives the use of the property as well as any income that it may provide." Thus, state custody protects the property of the missing owner while awaiting possible reclamation, and reflects "a policy that unclaimed property should benefit the general public rather than holders of the property."
Id.
 {¶ 26} Like Indiana's, Louisiana's UPL contained a provision finding that property is presumed abandoned if it is unclaimed by the owner for a statutorily prescribed period of time. Relying on Texaco, Smyth,Smolow, Fong, and Louisiana Health Service and Indemnity Co. v.Tarver, (La.App. 1994), 635 So.2d 1090, the court concluded that Louisiana's statutory scheme did not constitute an actionable "taking," and therefore, *Page 17 
there was no basis to claim a constitutionally mandated payment of just compensation. Id.
 {¶ 27} The trial court summarily dismissed Smyth because under the IUPA unclaimed property is presumed abandoned.[2] Since "nothing in Ohio law `presumes' abandonment of title," the trial court foundSmyth bears no relevance to the claims asserted here. (Aug. 7, 2006 Decision at 13.) Thus, the question becomes, does the lack of the presumption of abandonment in the Ohio UFA render unconstitutional the portion of the Act that retains interest earned on unclaimed funds while such funds are in the custody of state? We find that it does not.
 {¶ 28} We acknowledge that Ohio's UFA does not contain a presumption of abandonment as do the statutes at issue in Indiana, Louisiana, and Pennsylvania. However, for purposes of the UFA, and by virtue of its action, unclaimed property is essentially abandoned property. The operation of the Louisiana's UPL and Indiana's UPA, is similar, if not identical to Ohio's. The same or similar criteria are used in the IUPA and the LUPL to presume abandonment as the criteria used in Ohio to constitute unclaimed property. The three statutes have notice requirements to property owners, as well as reporting requirements to required state agencies. Both the IUPA and Ohio UFA have the stated purposes of reuniting owners with the value of unclaimed property and giving the state, rather than the holder, the benefit of the use of the unclaimed property pending reclamation by the owner. Finally, and perhaps most notably, is that under the IUPA, the LUPL, and Ohio's UFA,the states do not actually take title to the property. *Page 18 
Thus, even in Indiana and Louisiana where property is presumed abandoned (under virtually identical criteria to Ohio's to be considered unclaimed), the state never takes title to the property, only custody, until the owner reclaims the property.
 {¶ 29} Appellee argues that unclaimed property in Ohio cannot be considered abandoned property because by definition abandonment requires that an owner intentionally disclaim ownership with theintention of not reclaiming it. However, as previously discussed, unclaimed property legislation, by its very operation, considers property abandoned without an element of intent, but instead by the owner's failure to make use of the property — which is how Ohio's UFA operates.
 {¶ 30} In assessing the nature of the property at issue under the IUPA, the court in Smyth made the following observations:
 Unclaimed property laws, such as Indiana's Act, do not operate as a true escheat because the States take possession of, but not title to, property received from the holder. The passing of possession of property from the holder to the State under unclaimed property acts is generally referred to as a "custodial escheat." See e.g., Fong v. Westly, 117 Cal.App.4th 841, 12 Cal.Rptr.3d 76, 77 (2004), rev. denied.
 Unclaimed property acts are designed to serve the dual purposes of reuniting owners with the value of unclaimed property and giving the state, rather than the holder, the benefit of the use of the unclaimed property pending reclamation by the owner. See e.g., Texas Municipal League Intergovernmental Risk Pool v. Texas Workers' Compensation Commission, 74 S.W. 3d 377, 382 (Tx. 2002). Such acts serve a public purpose by raising revenue to benefit all citizens of the state. See Commonwealth v. Vega, 174 F.3d 870, 872 (7th Cir. 1999), cert. denied, 528 U.S. 873, *Page 19 120 S.Ct. 176, 145 L.Ed.2d 149 (1999); Louisiana Health Service and Indemnity Co. v. Tarver, 635 So.2d 1090, 1092 (La. 1994).
Id. at 222.
 {¶ 31} In finding the IUPA constitutional, the court stated:
 While it is true that the Act is not a true escheat act, it is also true that it is not purely custodial in nature. The chief incidents of ownership of property are the rights of possession, of use and enjoyment, and of disposition. Rhoades v. State, 224 Ind. 569, 70 N.E.2d 27, 29 (1946); Indiana Waste Systems of Indiana, Inc. v. Indiana Department of State Revenue, 633 N.E.2d 359, 367 (Ind.Tax 1994). Under the Act, however, an owner's failure to exercise his or her right of possession results in a presumption that the property has been abandoned. Once the property has been presumed abandoned and has been remitted to the State by the holder, the State then may, contrary to the owner's right of disposition, sell the property. A state's exercise of this incident may have significant consequences. See Fong, 12 Cal.Rptr.3d at 79-80 (sale of stock for $ 7,000 per share by the State that was allegedly worth approximately $ 70,000 per share). The forfeiture of interest and dividends pursuant to the Act also results from the owner's failure to assert his or her property rights and is a further indication that the Act is not purely custodial. Thus, Smyth's reliance on the custodial nature of the Act is misplaced.
 * * *
 The Act conditions the retention of full property rights upon the owner's exercise of such rights. Failure to exercise those rights results in a presumption of abandonment and a custodial escheat that deprives the owner of some of the incidents of ownership. Because it is the owner's failure to act, and not the State's exercise of its sovereign power, that causes the deprivation, there is no "taking" that requires compensation.
Id. at 223-224. *Page 20 
 {¶ 32} In Hooks, the Louisiana court reasoned that the triggering event in an unclaimed property case is not the state's overt act of taking private property from an owner, but is the owner's act of abandonment over a period of several years. Id. Consequently, the court held the state's exercise of its statutorily imposed custody, and the legislature's decision to award owners only the interest provided for by statute, did not equate to a "taking." Id.
 {¶ 33} We are presented with property, that though title admittedly remains with the owner, custody has passed to the state, and is not the sort of private property as is at issue in Webb's, Brown, Phillips, and their progeny, that is subject to an overt taking by the government. Rather, this litigation presents property that is akin to that inTexaco, Smyth, Smolow, and Hooks. As established by Texaco and its successors, the judiciary had never required the state to compensate an owner for the consequences of his own neglect. States invariably have the power to permit unused or abandoned property to revert to another after the passage of time. Id. The property lapse here is not triggered by overt state action, but instead is triggered by the owner's failure to make any use of the property for a statutorily prescribed period of time.
 {¶ 34} We find that for purposes of Ohio's UFA, unclaimed property is the equivalent of abandoned property. Because of the unique nature of the property, the state's retention of the interest earned on unclaimed funds while those funds are in the custody and control of the state, due to the owner's failure to take any action with respect to the property for the statutorily prescribed period of time, does not constitute a taking *Page 21 
that requires compensation. It is the owner's conduct, and not that of the state that causes the lapse of the property right. Therefore, appellee has not established that the challenged legislation is unconstitutional beyond a reasonable doubt, and thereby has failed to overcome the presumption that the challenged legislation is constitutional.
 {¶ 35} Accordingly, appellant's first assignment of error is sustained. Because we have sustained appellant's first assignment of error, appellant's remaining assignments of error, and appellee's cross-assignment of error are rendered moot.
 {¶ 36} For the foregoing reasons, appellant's first assignment of error is sustained, appellant's second and third assignments of error and appellee's cross-assignment of error are overruled as moot, and the judgment of the Franklin County Court of Common Pleas is reversed. This matter is hereby remanded to that court for further proceedings consistent with law and this opinion.
Judgment reversed; cause remanded.
KLATT FRENCH, JJ., concur.
[1] La.Rev.Stat.Ann. 9:163 provides that a successful reclaiming owner is "entitled to receive from the [state] any gain realized or accruing on the property at or before liquidation or conversion of the property into money. If the property was interest bearing to the owner on the date of surrender by the holder, the [state] shall pay interest at a rate of five percent a year or any lesser rate the property earned while in the possession of the holder. Interest begins to accrue when the property is delivered to the [state] and ceases on the earlier of the expiration of ten years after delivery or the date on which payment is made to the owner."
[2] The trial court cited only to Smyth, as Hooks was decided after the trial court rendered its decision. *Page 1